## SPALDING *v.* MASON.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 55. Argued April 25, 26, 1895. — Decided March 2, 1896.

An interlocutory order or decree of the Supreme Court of the District of Columbia at special term may be reviewed by the general term on appeal, without awaiting a final determination of the cause; and, on appeal to this court from the final decree at general term, the entire record is brought up for review.

After a critical examination of the record, the court, on the facts, finds that the contract which forms the subject of controversy in this suit is a valid contract, and directs judgment for the defendant in error for the principal sum which it finds to be due him, but orders a correction to be made in the calculation of interest by the court below.

Mason filed his bill in equity in the Supreme Court of the District of Columbia for a discovery and an accounting by Harvey Spalding as to certain fees collected by the defendant,

in which Mason claimed a one fourth interest. The persons joined with Spalding in this court are the sureties upon an appeal bond given by Spalding at the general term, upon the affirmance of a judgment in favor of Mason, having entered judgment against all the parties who executed the appeal bond.

The interest in question was acquired by Mason under an agreement between himself and Spalding, executed June 3, 1880, which recited that Spalding had on hand about 1700 claims (and expected to receive enough more to make up 4000 claims) for moneys which was believed would be due from the government to postmasters and late postmasters upon a readjustment of salaries under the provisions of an act approved June 12, 1866, and was in need of funds to prosecute said claims and to urge the passage of bills then pending in Congress looking to their settlement. By the agreement Spalding sold to Mason for the consideration of $2500, payable in instalments, a one fourth interest in the fees to be collected from said claims, " free from charges for expenses in prosecuting said claims to collection," and Spalding agreed to obtain as many claims as he could secure in addition to those referred to in the contract as on hand or expected to be acquired.

The Congressional bills alluded to in the agreement failed of passage, but at the next Congress an act was passed and was approved March 3, 1883, which was similar to one of said bills which had failed of passage at the preceding Congress, " except two unimportant verbal alterations, with a proviso added as to the manner of application for readjustment of salaries thereunder and the manner of payment thereof."

The bill averred that defendant had collected a large sum of money as fees upon the claims in question and was largely indebted to complainant on account thereof, but that he had failed and refused to render a statement of the amount of the fees collected, and, in substance, the bill also averred that the defendant Spalding was liable to account to complainant not only for fees received by him from the four thousand claims referred to in the agreement as on hand and expected to be

obtained, but for all fees received by him from claimants whose rights depended upon the act of 1866 and the act of 1883.

In his answer Spalding averred that at the time of the negotiation for the sale to Mason of an interest in his business he had in his possession, and so informed Mason, lists of the names of some 7500 postmasters, who he was satisfied were embraced by the provisions of the bills then pending in the respective houses of Congress. He alleged, in substance, that upon the defeat of the House bill on January 17, 1881, the rights of Mason under the contract of June 3, 1880, ceased, and a new and oral contract was entered into between them, by which in consideration of his (Spalding's) agreement to make renewed efforts to procure favorable legislation and secure the collection of the claims in question, and the retention by complainant of an interest in the claims covered by the prior contract, complainant agreed to share in future expenses and make advances of money for such purposes; and it was averred that in consequence of such renewed efforts on defendant's part the act of March 3, 1883, became law. He alleged that Mason failed to keep his agreement in respect to advances, and for that reason, in September, 1882, he (Spalding) terminated the contract between them by notice to him, but that in consideration of the $2500 paid under the first contract he promised to pay Mason in case of eventual success ten thousand dollars, and it was averred that since said date he had conducted his business upon that footing.

The answer also alleged: "That besides the 1700 claims in defendant's hands on the 3d of June, 1880, he had received by the 17th of January, 1881, some 500; and also between the latter date and March 3, 1883, he had procured enough more of these to make in all 4208, all of these being included in the list of 7500 first above mentioned." It was charged that in administering the act of March 3, 1883, the Postmaster General adopted a construction of that act and of the act of 1866 which was entirely different from the construction of the act of 1866 assumed by complainant and defendant when entering into the contract of June 3, 1880, and from that

entertained by defendant when making up said list of 7500 persons who it was supposed would be entitled to claim relief. He averred that the effect of the construction given to the act of 1883 by the Postmaster General was not only to defeat claims mentioned in said list, but to create a class of new claims not contemplated at the time he made his original contract with Mason.

It was also averred that, in consequence of the new claimants whose rights arose solely from this new construction, defendant, subsequent to July, 1883, adapted his business thereto, and secured 20,000 cases of postmasters other than those who were upon the list of 7500 cases, or who had been thought of as having claims under the act aforesaid at any time before the month of May, 1883.

The answer concluded with a statement as to the fees collected from the 4208 claims, (out of the list of 7500,) etc., and averred that he (Spalding) had been put to an expense of about ten per cent in collecting said fees by reason of a proviso in the act of 1883 requiring payments to be made directly to the claimants, and denied "that excepting what may be due to the complainant upon the above statement after deducting therefrom what he has already received thereabouts, any debt is or will at any time be due to the said complainant by this defendant because of the contract of June 3, 1880, and subsequent dealing between the parties thereto."

An additional answer was subsequently filed giving a more detailed account of the receipts, etc., in connection with all the claims. Various sums were also set out claimed to have been expended after January 17, 1881 — the date of the alleged new and oral contract — for clerk hire, printing, office rent, postage, discounts, interest, etc., in prosecuting the business. It was specifically stated that "this statement does not include the ten per cent expended as in the original answer stated to collect fees that had been received."

Issue was joined by the replication of complainant, and evidence was taken in the cause. Upon the hearing, the court, on March 23, 1888, entered a decree which substantially rejected the complainant's demand for a right to share in any

other fees than those resulting from such claims as were included in the list of 7500 cases referred to in the answer, and contemplated and considered by the parties at the time the contract was made.

It adjudged in favor of the complainant that he was entitled to one fourth of each and every fee which had been collected or might thereafter be collected upon claims included in the list aforesaid, and that he was not chargeable with any part of the expenses of the business of securing and prosecuting such claims. The cause was referred to an auditor to state an account upon this basis. From this decree an appeal was taken by the complainant to the general term, and, on January 23, 1889, that tribunal affirmed the decree of the special term, and remanded the cause for further proceedings in accordance therewith. The opinion of the general term is reported in 18 Dist. Col. 115.

The hearing before the auditor was then proceeded with. He reported that Mason was entitled to share in the fees received by Spalding, as well from claims which had been forwarded to him by attorneys as in claims that had been received directly from claimants.

He also held that certain claims designated by half numbers, that were entered in a book which purported to contain the list of the 7500 cases heretofore referred to, constituted part of the said list of 7500 cases, and that complainant was entitled to share in the fees derived from said claims. He allowed deductions made by Spalding for bank discounts on collections of drafts for fees, as also sums paid attorneys for collecting fees, upon the theory that such charges were not expenses for securing and prosecuting the claims, which latter claim had been rejected by the court; but he declined to allow a claim made by defendant for a deduction of twenty per cent from complainant's share, for alleged expenses in collecting fees, on the ground that the same had not been sufficiently proven. Other matters included in the report are not in controversy in this court.

Exceptions were filed to the auditor's report on behalf of both parties.

Upon the amount found due by the auditor, as Mason's share of fees collected in accordance with the decree of reference, the auditor allowed interest as follows: He took the sum total of fees collected in each month and awarded interest to run from the beginning of the succeeding month, and on the payments made by Spalding to Mason on account of fees, he allowed interest from the date of payment.

The court, at the special term, overruled all of the exceptions, and approved and confirmed the report of the auditor, and entered judgment in favor of complainant for the sum of $16,304.82 (being the principal sum of $13,669.11, and interest to date of decree). The court also reserved the right to complainant to apply thereafter in this suit for an accounting as to fees which might subsequently be collected from claims embraced in the list of 7500, these being the only claims in which Mason was adjudged to have an interest.

On appeal the general term modified the judgment as to interest by providing that the interest on the principal sum should commence from August 9, 1887, the date of the demand by Mason for an accounting; set aside the reservation of a right in favor of complainant to apply in this action for a further accounting, and entered a decree for the amount found due against the defendant Spalding and the sureties on his bond for appeal. The cause was then brought here by appeal.

*Mr. W. Willoughby* for appellants.

*Mr. W. L. Cole* for appellee.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

A preliminary objection has been advanced on behalf of the appellee against a review of the first judgment rendered by the general term, which determined the principles upon which the account was to be taken by the auditor. It is claimed that the appellants are concluded by the failure of the then defendant Harvey Spalding to appeal from the decree of the

special term, when an appeal had been taken by the complainant.

Section 772 of the Revised Statutes, relating to the District of Columbia, provides as follows:

"Any party aggrieved by any order, judgment or decree, made or pronounced at any special term, may, if the same involve the merits of the action or proceeding, appeal therefrom to the general term of the Supreme Court, and upon such appeal the general term shall review such order, judgment or decree, and affirm, reverse or modify the same, as shall be just."

This section does not in terms confine the right of appeal from the special to the general term to merely final orders or final decrees in a cause. An interlocutory order or decree which involves the merits may be reviewed by the general term upon the appeal of a dissatisfied party without awaiting a final determination of the cause. It is not made obligatory upon a dissatisfied party to appeal, because the other party has done so; and we are of opinion that, upon an appeal to this court from a final decree of the general term (Rev. Stat. § 705) the entire record is brought up for review. *Hitz* v. *Jenks,* 123 U. S. 297; *District of Columbia* v. *McBlair,* 124 U. S. 320; *Grant* v. *Phœnix Mutual Life Ins. Co.,* 121 U. S. 105.

The errors specified in the brief of counsel are fifteen in number. The first six and number thirteen attack the correctness of the decision holding that the complainant was entitled to recover his proportion of the fees collected upon claims embraced in the list of 7500 referred to in the answer. Assignment seven covers the second exception taken to the report of the auditor; assignments eight and nine question the correctness of the finding "that the complainant is not chargeable with any part of the expenses of the business of securing and prosecuting" the claims contained in said list of 7500 cases; the tenth and eleventh assignments of error cover the fourth exception to the auditor's report; and the twelfth assignment alleges error in the allowance of interest.

Before taking up, for detailed examination, these assign-

ments of error, it will be necessary to consider the claims
which the defendant Spalding represented at the time of the
execution of the contract of June 3, 1880, and his construc-
tion of the rights of the claimants.

We quote the following statement from the brief of his
counsel:

"Under the provisions of the act of June 22, 1854, c. 61,
10 Stat. 298, postmasters were paid for their services by com-
missions on the postage collected at their respective offices,
which commissions were adjusted by the Auditor of the Post
Office Department upon the returns for each quarter after the
said returns had been made by the postmaster and received by
the Department.

"By the act of July 1, 1864, c. 196, 13 Stat. 335, a com-
plete change was made in the mode of regulating the compen-
sation of postmasters. A salary system was adopted instead
of the commission system. The salaries were fixed for two
years in advance upon the basis of the business of the past two
years, that is, the commissions upon the business of the past
two years were computed at the rate fixed by the act of 1854,
and the sum thus arrived at was made the fixed salary of the
office for the ensuing two years, a readjustment of the salaries
of every post office to be made upon this basis every two
years."

Under the provisions of the act of 1864 it necessarily fol-
lowed that where the business of an office rapidly increased
the compensation earned by the postmaster fell below what
he would have received if his pay had been calculated by
commissions as under the act of 1854. It also followed that
if the business of the office fell off, the incumbent might receive
a larger compensation than he would have been entitled to
under the previous act. The act of June 12, 1866, c. 114, 14
Stat. 59, directed the Postmaster General to readjust salaries
of postmasters when the quarterly returns showed that the
salary allowed the postmaster was ten per cent less than it
would have been had the provision of the act of 1864 con-
tinued in force. The claims which Spalding was prosecuting
resulted from this act of 1866, and the reason for their prose-

cution before Congress was the fact that the Postmaster General had not made a readjustment, and that this court had decided in January, 1878, that the Court of Claims had no jurisdiction to enter a judgment for any amount in favor of such claimants until after the Postmaster General had readjusted the salaries.

By an act approved March 3, 1883, c. 119, 22 Stat. 487, it was provided:

" That the Postmaster General be, and he is hereby, authorized and directed to readjust the salaries of all postmasters and late postmasters of the third, fourth and fifth classes, under the classification provided for in the act of July first, eighteen hundred and sixty-four, whose salaries have not heretofore been readjusted under the terms of section eight of the act of June twelfth, eighteen hundred and sixty-six, who made sworn returns of receipts and business for readjustment of salary to the Postmaster General, the First Assistant Postmaster General or the Third Assistant Postmaster General, or who made quarterly returns in conformity to the then existing laws and regulations, showing that the salary allowed was ten per centum less than it would have been upon the basis of commissions under the act of June twelfth, eighteen hundred and sixty-six, and to date from the beginning of the quarter succeeding that in which such sworn returns of receipts and business or quarterly returns were made: *Provided*, That every readjustment of salary under this act shall be upon a written application signed by the postmaster or late postmaster or legal representative entitled to said readjustment; and that each payment shall be by warrant or check on the Treasurer or some Assistant Treasurer of the United States, made payable to the order of said applicant, and forwarded, by mail, to him at the post office within whose delivery he resides, and which address shall be set forth in the application above provided for."

Except as to one or two immaterial verbal alterations, this act of 1883 was similar to House bill 3981, mentioned in the contract between complainant and defendant, and which failed to pass, January 17, 1881, except that the House

bill did not embody the proviso found at the end of the act of 1883.

In making up the list of 7500 cases referred to, Spalding had construed .the act of 1866 — as he subsequently did the act of 1883 — as entitling the claimants embraced in said list to a sum equal to the difference between the amount of any salary which, during a particular term, they had received, and the sum which they would have received, had they been paid commissions on the business done in the office at the rate prescribed by the act of 1854. The Postmaster General, in May, 1883 — and his opinion was concurred in by the Attorney General in February, 1884 — construed the act of 1883 in connection with the act of 1866 in a different manner. It is unnecessary for the purpose of this opinion to state or discuss the particulars in which the construction of the Postmaster General differed from that adopted by Spalding, or to indicate in any way which construction was correct. It is unquestioned, however, that the operation of the construction by the Postmaster General was that many of the persons whose claims were embraced in the list of 7500 cases referred to in the contract of June 3, 1880, were excluded from receiving any additional pay, and that rights arose in favor of others who were not supposed by Spalding to have claims at the time he prepared the list. Mason asserted a right to participate not only in the fees collected from the claims embraced in the list of 7500, but also in all other claims obtained by Spalding after the passage of the act of 1883. The general term, however, decided adversely to the contention of the complainant, and held that his share in fees was limited to cases embraced in the list of 7500, upon which claims the court held that the contract between complainant and defendant was based. In that construction complainant has acquiesced.

Assignments numbers one to six read as follows:

"1st. The court erred in allowing to the complainant an interest in all or any of the claims embraced in a list of 7500 claims mentioned in the answer of defendant.

"2d. The court erred in holding that the claims contemplated by the parties when they executed the contract .of

June 3, 1880, were of such a nature that they could be regarded for the purpose of giving the complainant an interest therein, as the same claims that were actually prosecuted and collected under the act of 1883 and August 4, 1886.

" 3d. The court erred in allowing the complainant $9972.88 as his share of fees collected by the defendant on claims paid at various dates between October 1, 1886, and May 1, 1889, as all of said fees were collected upon claims allowed and paid neither under authority of section 8 of the act of June 12, 1866, or under authority of the act of March 3, 1883, but under the sole authority contained in the act of August 4, 1886, 24, Stat. 308.

" 4th. The court erred in not holding that the contract of June 3, 1880, became of no effect by the failure of passage of the bill in Congress mentioned therein, and in not holding that thereupon a new contract was made which became of no effect in charging the defendant with any liability thereunder by reason of the failure of the complainant to perform the same on his part, and by the putting an end thereto by the act of the defendant.

" 5th. The court erred in holding that the complainant was entitled to one fourth of all fees which have been collected out of the said list of 7500 claims which were procured subsequently to January 17, 1881.

" 6th. The court erred in holding that the complainant was entitled to one fourth of all fees which had been collected out of the list of 7500 claims which were procured subsequently to March 3, 1883."

As before stated, no appeal was taken by the defendant to the general term from the interlocutory decree at the special term fixing the principles upon which the account should be taken. At the hearing in general term he seems to have acquiesced in the view that the complainant was entitled to an account as to 4208 cases admitted in the answer to have been received by Spaulding for prosecution, and to have been embraced in his list of 7500 cases, from which he received fees, and concerning which he offered to account. On the hearing before the auditor no exception was taken to the

admission of evidence as to the fees calculated upon claims embraced in the list of 7500 cases except as to cases which were sent to him for prosecution by attorneys. And although the auditor reported that the "amount of fees received by him in the cases included in the order of reference" was the sum of $16,339.11, no exception was taken by Spalding to such finding.

It is insisted now, however, that a proper construction of the contract excludes the complainant from any share whatever in the fees collected upon the claims embraced in the list of 7500 cases. This is asserted, although the claimants had valid claims against the government under the act of 1866, either upon the theory which Spalding believed to be correct according to his construction of the act, or upon the theory actually put into practice by the Postmaster General under his construction of that act in connection with the act of 1883. The contract, it is contended, contemplated that a recovery by the claimants should be had upon the precise theory which Spalding and the complainant entertained when the contract of June 3, 1880, was made. We do not adopt such a narrow view of the terms of the contract between the parties in the absence of clear and unequivocal language warranting it. This construction imports that Mason took the hazard, not of Spalding's ability to collect from the government for the claimants he represented, but the hazard of the government adopting and putting in practice Spalding's theory as to the exact status of the claimants under the act of 1866. If the claim of counsel is well founded, then had the House bill referred to in the contract, and which, as has been shown, was practically identical with the subsequent act of 1883, become a law, a construction of that act similar to that adopted by the Postmaster General with reference to the act of 1883 would have defeated all Mason's rights under the contract. But, in consideration of the payment by Mason of twenty-five hundred dollars, Spalding agreed to "prosecute to collection" the "claims" then in hand and others expected to be secured of "postmasters and late postmasters for adjustment of their salaries, in conformity

to section 8 of the act of June 12, 1866." There was no quali-
fication that the collection should be according to a particular
theory as to the amount which ought to be recovered, but the
plain import was that whatever was due by the general gov-
ernment to the claimants under the provisions of that act was to
be collected. Whether we look at the acts of 1866 and 1883,
or the later act of 1886, which merely approved the form of
readjustment which had been theretofore pursued by the Post-
master General under the act of 1883, and directed that mode
of adjustment to be continued in the settlement of further
claims under the act of 1866, it is clear that whatever was
allowed and paid to claimants was acquired by virtue of the
provisions of the act of 1866. We therefore find assignments
one and two to be without merit.

The objection covered by assignment three is also made for
the first time in this court. No exception of this character
was taken to the findings of the auditor. It appears to have
been an afterthought. The point that payments subsequent
to October 1, 1886, were made solely under the authority of
the act of August 4, 1886, is clearly not well taken, for that
act did not originate rights against the government, but simply
regulated the mode of adjusting rights which had vested under
the act of 1866, pursuant to the remedy afforded by the act of
1883. We have looked in vain through the carefully prepared
answer of the defendant, himself an attorney, for any sugges-
tion that the act of August 4, 1886, in any way injuriously
affected the rights of complainant, though an intimation to
that effect is contained in one or more letters from Spalding
to Mason written after August 9, 1887. All through the
answer it is admitted that the remedy by which Spalding
made his collections was provided by the act of 1883. Fur-
ther, the table showing the dates from which the auditor
found the interest should be calculated, does not justify the
assumption of counsel that any part of the $9972.88 was al-
lowed complainant, as his share of fees collected by defendant
on claims paid at various times between October 1, 1886, and
May 1, 1889. The table does not indicate when the "claims"
were either "allowed" or "paid," and as the fees were col-

lected from claimants after they had received the full amount of their claims, it may well be that the entire sum had been allowed and paid by the government prior to October 1, 1886.

Some of the observations heretofore made are applicable to the fourth assignment of error. The terms of the contract will not justify the construction that the rights of complainant were dependent upon the successful passage of the bills then pending in Congress. As to the alleged oral contract set up in the answer as having been entered into on the day of the failure of the passage of the House bill, to wit, January 17, 1881, aside from the fact that no consideration appears therefor, the making of the same was flatly denied by complainant, and the auditor found that no such contract was entered into. We not only cannot say that the finding of the auditor, sustained by both the special and general terms of the Supreme Court of the District, is obviously wrong, but we think, on the contrary, that it was clearly warranted by the evidence. A circumstance which would be of great weight in inducing us to reach this conclusion, were it necessary for us to carefully weigh the evidence, is the fact that at the time of the failure of the bill in question five hundred dollars was still due from Mason to defendant under the contract of June 3, 1880, and that sum was subsequently paid to Spalding, and the payment endorsed upon the contract, and there was no indorsement of a modification in any respect of the terms of that contract.

What we have said with reference to the fourth assignment, disposes of the fifth.

The sixth assignment of error needs but little consideration. It was provided in the contract of June 3, 1880, as follows:

"The said Harvey Spalding agrees and binds himself to obtain all the claims of the class named he can and to make contracts for fees equal to twenty-five per cent of the collections and to subject the whole to be shared together with those in hand by said George Mason for the consideration herein specified."

The House bill 3981, referred to in the contract between the parties as having been favorably reported by the proper committee, was, as we have shown, practically identical with

the subsequent act of 1883, the only material difference being that the proviso contained in the act of 1883 was not in the House bill. If we suppose that the House bill in question had been amended by adding a similar proviso, and, as thus amended, became a law, it could not reasonably be contended that Mason would not have had a right to share in any fees collected upon claims embraced in the list of 7500 cases, which Spalding had procured for collection subsequent to the passage of the bill. If such would not have been the effect had the House bill passed with that proviso, no reason is apparent why a contrary effect should be claimed for the act of 1883. The assignment is not tenable.

The seventh assignment reads as follows :

" 7th. The court erred in allowing complainant an interest in fees in claims registered in the same book as the 7500 claims, but inserted at a different time, and designated by half numbers."

This is a reiteration of the second exception to the auditor's report.

The list of 7500 cases which the evidence shows Spalding had collected in books and upon slips at the time of the making of the contract was supposed and was intended to embrace all persons entitled to $25 and over, by virtue of section 8 of the act of 1866, as construed by Spalding. His counsel does not argue that the half numbered claims held by the auditor to constitute part of the list of 7500 cases were not embraced in the character of claims designed to be covered by said list.

We adopt the reasoning by which the auditor reached a decision allowing complainant a share in the fees derived from these half numbered claims. He said :

" In the examination of the defendant's books containing a list of the claims which are the subject of this account there appeared to have been entered claims described in the testimony as half numbers, and the fees received in these cases are not included in the statements of the defendant above referred to. These claims are enumerated in another paper marked ' Defendant's Schedule B.'

" The defendant contends (see his brief) that these claims

do not belong on the Mason list; they were subsequently entered there in error, and that they are not covered by the decree.

"The order of reference directs an accounting as to the claims contained 'in a list of about 7500 cases mentioned in the defendant's answer.' No list was filed with the answer, nor has any list been produced in the progress of the cause other than the schedules made by the defendant for the purposes of this reference and the books in which these half numbers appear. It is clear, therefore, that the court in making the decree had no such list before it and could not intend to restrict the accounting to any particular claim by names or numbers. Indeed, the whole case shows the intention of the court to have been to divide the cases as to which the bill sought an accounting into two classes, the dividing line being the change of construction by the government officers of the law relating to these claims.

"So far as appears here, these half numbered cases are of the same class as the others on the Mason list, and are, therefore, included in the contract of sale, and not excluded by the decree.

"The evidence as to the time of their entry on the list and the attempted withdrawal of them from it is not at all clear.

"These fees aggregate the sum of $1678.48."

The eighth and ninth assignments of error read as follows:

"8th. The court erred in holding that the complainant was not chargeable with any part of the expense of procuring claims obtained by the defendant subsequent to January 17, 1871.

"9th. The court erred in holding that the complainant was not chargeable with any part of the expenses of prosecuting claims obtained by the defendant." 

It was expressly stipulated in the contract of June 3, 1880, that the one fourth interest of Mason should be "free from all charges of expenses in prosecuting said claims to collection."

These assignments, therefore, depend for their support upon the claim that on the 17th of January, 1881, a new contract

was entered into between complainant and defendant, under the terms of which Mason agreed to share in all future expenses connected with the business. Our concurrence with the holding of the master that no such agreement was entered into leads us to overrule these assignments.

The tenth and eleventh assignments of error read as follows:

"10th. The court erred in holding that the complainant was not chargeable with any part of the expenses of securing and collecting fees which were incurred in consequence of the proviso of the act of March 3, 1883, and of a circular issued by the Postmaster General to make difficult the collection of the fees.

"11th. The court erred in not allowing the defendant twenty per cent or some per cent or gross amount for expenses in collecting fees."

In his original answer, defendant, after averring the amount of fees collected upon the 4208 claims concerning which he submitted to an account, said, "that owing to the change made by the act of 1883 in the previous method of collecting fees, as well as to certain circulars thereunder issued by the Postmaster General, he has been put to an expense of about ten per cent to collect such fees after the allowances had been made and in respect of which they were due." This refers to the requirement by Congress that the claims under the act, when allowed, should be paid to the claimants directly, and not to attorneys.

In his additional answer Spalding admitted that he had received for collection 24,259 claims, and averred that the expenditures incurred and paid for clerk hire, printing, office rent, postage, discounts, interest, etc., in prosecuting said claims from January 17, 1881, to December 31, 1887, aggregated $64,547.75, but that such expenditures did not include the ten per cent expended as in the original answer stated to collect fees that had been earned. It thus appears that before the taking of testimony the expenses of the prosecution of the claims was sworn to by the defendant as being distinct and separate from the expense of collecting fees.

The auditor allowed all actual, direct and necessary expenses

in the collection of fees, such as bank charges, express charges, and attorney's fees, the total amount of such expenses having been deducted from the gross fee charged by Spalding under the contract with claimants, the net sum received by Spalding being returned as the gross amount of fees which he had collected.

Changing, however, the position taken in his sworn answer, the defendant demanded at the auditor's hands an allowance for expenses in collecting fees, for office rent, clerk hire, postage, stationery, printing, etc., from 1883 to 1887, to an amount exceeding more than one half the total expenditures of that character stated in Spalding's answer to have been by him incurred in the prosecution of the entire business of over twenty-four thousand claims. Mason had an interest in but 4208 of these, and 427 of that number were received from two attorneys, and presumably did not require special effort in each of the cases to collect Spalding's proportion of the fees. The claims asserted were not itemized but were made in bulk sums, and the amounts were mere estimates. No receipts or vouchers were produced by defendant, nor was any book produced containing itemized statements whereby the propriety or correctness of the expenditures might have been determined or tested. Though no fees were collected during the year 1883, and the first five months of 1884, one half of the total expenses of that period are charged as expenses for collection of fees.

The defendant testified that the gross amount of fees collected on all claims was $165,241.80. He claimed that in order to effect collections he had expended for —

| | | |
|---|---:|---:|
| Clerk hire | $15,608 | 24 |
| Office rent | 22,540 | 00 |
| Postage | 6,375 | 00 |
| Stationery, printing, etc. | 5,959 | 18 |
| Miscellaneous expenses | 2,565 | 78 |
| Total | $33,048 | 20 |

The alleged expenses thus amounted to exactly 20 per cent

of the gross amount of fees collected, whereas the answer claimed but ten per cent.

The unreliable character of the testimony as to these items of expenditure is illustrated by counsel for appellee in his brief. On cross-examination of Mr. Spalding as to an expense account filed May 22, 1889, he testified that he had disbursed the following amounts:

*Statement made at session May 22, 1889.*

| | | | |
|---|---|---|---|
| Half of postage from March 3, 1883, to January 1, 1884 | | | $750 00 |
| Half of postage in 1884 | | | 1,000 00 |
| " | " | " 1885 | 1,000 00 |
| " | " | " 1886 | 1,500 00 |
| Whole of | " | " 1887 | 750 00 |
| " | " | " 1888 | 1,000 00 |
| " | " | 5 months, 1889 | 375 00 |
| Add miscellaneous expenses | | | 2,565 78 |
| | | | $8,940 78 |

When pressed to give the items of the miscellaneous expenditures stated as $2565.78, defendant promised a full statement at the next session, but instead of making such explanation, he filed a statement showing miscellaneous expenditures reduced to $143.50, but the postage items increased proportionately, as shown in the following statement:

*Statement made at session June 5, 1889.*

| | | | |
|---|---|---|---|
| Half of postage from March 3, 1883, to January 1, 1884 | | | $865 00 |
| Half of postage in 1884 | | | 730 00 |
| " | " | " 1885 | 1,600 00 |
| " | " | " 1886 | 2,920 00 |
| Whole | " | " 1887 | 1,300 00 |
| " | " | " 1888 | 1,240 00 |
| " | " | 5 months, 1889 | 518 50 |
| Total | | | $9,173 50 |

The contract did not contemplate a necessity for expenditures in connection with the collection of fees, as, on June 3, 1880, it was believed that drafts for the amounts of the difference claimed would be delivered to Spalding as attorney for the claimants, and that he would make his deduction of fees therefrom.

For this reason, the auditor reached the conclusion that Mason's interest should be charged with its just share of expenses necessary and reasonably incurred in securing and realizing the fees of which he was to receive a share with the qualification that perhaps before any considerable amount of such expenses had been incurred, the complainant should have been notified. Complainant does not find fault with the deductions actually allowed. Concerning, however, the claim for an allowance of twenty per cent upon Mason's share of fees, as an expense for collection, the auditor said :

" Some of these expenses were incurred in unsuccessful endeavors to secure fees, and before his interest in fees collected can be charged with expenses connected with fees not collected it should appear that he assented to such expenditures, or at least had knowledge of them. Neither of these conditions are shown to exist here.

" The defendant kept no current account of these expenditures even in gross and is now compelled to estimate some of them upon a basis of unreliable data. He made no attempt to keep any separate account of those incurred in securing the Mason fees as distinguished from his other business, as he should have done if he intended to claim allowance for them in his settlement with the complainant.

" Nor is the evidence before me sufficient to establish the necessity for or reasonable character of these expenses."

We find no obvious error in this conclusion. Where an allowance is asked which is clearly excessive and exorbitant, it is for the party claiming to be entitled to establish just what is the amount he is properly entitled to, and it is not made the duty of the court or its officers to arbitrarily guess at the amount.

The twelfth assignment alleges error in the allowance by

the general term, in its final decree, of interest upon the entire principal sum found due from August 9, 1887.

The contract of June 3, 1880, provided that "all the fees collected by the said Spalding shall be accounted for and settlements shall be made from time to time as collections are made, and the divisions thereof shall be made, three fourths going to said Spalding and one fourth to said Mason."

The auditor made monthly rests in the collection of fees, and allowed interest on all collections during a particular month from the first day of the succeeding month. The special term entered a decree in accordance with that method. The general term, however, sustained the exception to the auditor's allowance of interest, and modified the decree of the special term in that particular by allowing interest on the entire principal sum found due by the auditor from the time when complainant made his demand upon Spalding for an account as to the fees collected.

Spalding's failure, prior to August 9, 1887, to render an account and make settlements for collections of fees, is shown by the evidence of Mason to have been acquiesced in by him. The general term, therefore, correctly held that interest should run only from the date when the demand for an accounting was made, and the right of complainant thereto was denied.

Appellant strenuously insists that no interest whatever should be allowed. The claim is without merit. Defendant had no reasonable ground for refusing to account, at least as to the fees earned upon the claims embraced in the list of 7500 cases. To that extent he was clearly indebted to Mason, less the amount of any payments which he had made. He had in his possession and control the means of determining the amount of such indebtedness, and as to an indebtedness which he ought not to have disputed he should have ascertained the amount due and tendered it without prejudice to a dispute concerning other items. Interest is allowed both at law and equity upon money due. As said by this court in *Curtis* v. *Innerarity,* 6 How. 146, 154, considering and overruling an exception to an allowance of interest from the time certain payments had become due:

"It is a dictate of natural justice, and the law of every civilized country, that a man is bound in equity, not only to perform his engagements, but also to repair all the damages that accrue naturally from their breach. . . . Every one who contracts to pay money on a certain day knows that, if he fails to fulfil his contract, he must pay the established rate of interest as damages for his non-performance. Hence it may correctly be said that such is the implied contract of the parties."

It is no hardship for one who has had the use of money owing to another to be required to pay interest thereon from the time when the payment should have been made. *Crescent Mining Co.* v. *Wasatch Mining Co.*, 151 U. S. 317, 323.

The circumstance that the complainant may have considered himself entitled to an account and to receive a greater sum than was actually found to be due, does not affect complainant's right to the interest upon what was really due. *Sturm* v. *Boker*, 150 U. S. 312, 341. In the case just cited, while the right to an account was sustained, it was held that a portion of the matters claimed by complainant could not be allowed on a final accounting, but it was directed that the account should be stated up to the filing of the bill, and that any balance shown in favor of either side should bear interest from that date.

The general term, however, erred in its direction on the subject of interest. It overlooked the fact that some of the fees for which a recovery was allowed, amounting to $4735.06, were collected after August, 1887. The dates of the collections made after that date are shown by the record, and an allowance of an average of interest will correct the error.

This completes our consideration of the specific assignments of error. The general assignment that the court erred in not dismissing the bill of complaint with costs is shown to be without merit by what we have already stated.

The error in respect to interest necessitates a modification of the decree under review. As it is a matter, however, of mere interest, not affecting the real merits of the controversy, and which we think would have been corrected by the lower court,

had its attention been called to it, the costs of this appeal must be borne by appellants.

*It is therefore ordered that the judgment of the Supreme Court of the District of Columbia be and is hereby modified by providing that of the principal sum due $8934.05 shall bear interest from August 9, 1887, and $4735.06 shall bear interest from August 2, 1888, and as thus modified the judgment is affirmed at the costs of appellants.*

MR. JUSTICE GRAY dissented.