## In re CARTER.

(District Court, W. D. Arkansas, Texarkana Division. July 3, 1905.)

1. BANKRUPTCY—CLAIMS—PRESENTATION—PLEADING.
   On presentation of claims of creditors against a bankrupt no pleadings are authorized except the claim duly verified, as provided by Bankr. Act July 1, 1898, c. 541, § 57, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], and such objections as the trustee or any creditor may interpose to the allowance thereof.

2. SAME—ORIGINAL SECURITIES—ATTACHMENT TO CLAIM—PRESUMPTIONS.
   Where it did not appear that the original notes and mortgage which were the basis of a claim against a bankrupt were attached to the claim as required by the bankrupt law, but no objection was urged on that ground, it would be presumed that such original securities were present at the trial, and not attached, or that their presence was waived.

3. SAME—BURDEN OF PROOF.
   Where a claimant against a bankrupt's estate presented its claim in proper form, duly verified, except in certain particulars which the court treated as waived, such claim constituted a prima facie case in favor of the claimant, and the burden of proof was thereupon shifted to the objectors.

4. SAME—PRINCIPAL DEBTOR—HUSBAND AND WIFE—EVIDENCE.
   Where a bankrupt testified that the money for which notes in controversy sought to be proved as a claim against his estate were given was borrowed, and used by him in his mercantile business, and was loaned to him on the strength of his wife's signing the note with him, which evidence was uncontradicted, the facts that the wife's signature on the note was above that of her husband, that the money was placed to the wife's credit, and by her checked out to her husband, and that she gave a mortgage on her separate estate to secure the same, were insufficient to sustain a finding that the debt was that of the wife, and not that of the bankrupt.

5. SAME—RIGHTS OF SURETY—SUBROGATION.
   Under Bankr. Act July 1, 1898, c. 541, § 57i, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], providing that whenever a creditor whose claim against a bankrupt's estate is secured by the individual undertaking of any person fails to prove such claim the surety may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to the extent of the rights of the creditor, where a bankrupt's wife signed notes and executed a mortgage on her separate property to secure money borrowed for the bankrupt and used by him in his business, the wife, on payment of the loan, would be entitled to subrogation to the creditor's rights, or, in case the latter failed to prove the claim, to prove it in the creditor's name.

In Bankruptcy.

Webber & Webber, for trustee.

Moore & Moore, for bankrupt.

ROGERS, District Judge. The practice covering the presentation of claims of creditors to the referee in bankruptcy for allowance is correctly outlined in the case of In re Eleanor T. Sumner, 4 Am. Bankr. Rep. 124, 101 Fed. 224, and it is needless to copy it here. It is enough to say that no pleadings are necessary except the presentation of the claim, duly verified, in conformity with section 57 of the bankrupt law (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S.

Comp. St. 1901, p. 3443]), and such objections as the trustee or any creditor may interpose to the allowance thereof; and to the issues thus made the proof should be directed. If other pleadings are filed in the case, they are unauthorized. Under proper circumstances they may be treated as admissions; but the failure to file such pleadings cannot operate to prejudice either party. In the case at bar it does not appear that the original notes and mortgage were attached to the claim, as required by the bankrupt law. There was, however, no objection urged on that ground by the objectors, and presumably the original notes and mortgage were present at the trial, and not attached (or may have been attached and copies substituted), or their presence may have been waived. The record discloses nothing on this question. At all events, if the referee desired the notes and mortgage attached to the claim, he should have ordered them produced and declined to allow the claim to proceed further until they were, provided, of course, that they were in existence and under the control of the bankrupt. In re Eleanor T. Sumner, supra. But he did not disallow the claim on that ground. He based his disallowance on the ground that it was not really the debt of the bankrupt, but in fact the debt of his wife. This finding, in the opinion of the court, is so manifestly erroneous as to not require discussion. The bank presented its claim in proper form, and duly verified except in the above particulars, which the court treats as waived. This made a prima facie case for the bank, and under the bankrupt law it had the right to rest at that point, and the burden be shifted to the objectors. In this case the objectors offered no proof whatever; but the bank, in addition to proving the claim, offered the testimony of the bankrupt, and he testified that "the money for which the note in controversy was given, was borrowed and used by me in my mercantile business. * * * The money was loaned me on the strength of Mrs. Carter's signing the note with me." No other testimony was offered by either party, and this witness was not cross-examined at all. Neither one of the bank officers was examined or cross-examined, although the bank is located in the same town where the hearing was had. What is there in this record to overturn the positive proof of the cashier, who made proof of the claim, and of the bankrupt who gave this evidence? The court finds nothing in the record, except that it appears on the face of the note that the wife's signature is above that of her husband, coupled with the additional fact that when the first note was given (it being for the sum of $2,500) the money was placed to the credit of the wife, and she checked the whole sum out to the husband, who used it in carrying on his business. It may be added that the wife also gave a mortgage to secure the notes on her separate estate. Are any of these facts necessarily inconsistent with the positive testimony of the cashier of the bank and the bankrupt himself? Should these facts (call them suspicious if you will) be permitted to overturn the positive testimony of two witnesses who stand unimpeached, who testify positively to the contrary? The question is its own answer. The giving of a mortgage by the wife on her separate estate

to secure a debt of her husband is not an uncommon thing. Many wives very foolishly do this very thing. Nor is it inconsistent at all with the fact that the husband is the borrower. It may be admitted that it is not usual for a surety to sign a note above the principal; but that fact is not inconsistent with the claim of the bank that the bankrupt was the borrower, and his wife the surety, or joint maker. The fact that the money procured on the first note—i. e., $2,500—was deposited to the wife's credit may be treated as a suspicious circumstance; but it is greatly weakened by the additional fact (which stands undisputed) that the money borrowed on the notes subsequently given (which were executed in exactly the same way) was deposited to the credit of the bankrupt, and not his wife. It may be, in view of the course pursued, that if the bank or the bankrupt had been called upon to explain why it was that the money procured on the first note was placed to the wife's credit it would have been satisfactorily explained; but, as stated, the officers of the bank, who were in the same town, and the bankrupt, were on the witness stand. The bank officers were not examined, and the bankrupt was not cross-examined. The inference is—indeed, must necessarily be—that the objectors felt that their case would not be strengthened by the examination of the bank officers and the bankrupt. The finding of facts, therefore, by the master, to the effect that the wife was the borrower, is not sustained by the proof, and is manifestly erroneous and unjust.

However, in the opinion of the court, the conclusion reached is not decisive of the case. The case, as made by the record, stands in this way: The bankrupt has borrowed the money upon which the bank's claim is based. His wife has signed the notes, and become the joint maker with the bankrupt, and has executed a mortgage on her separate estate to secure the same (and confessedly the money was borrowed for the bankrupt, and was used by him in his business). In this state it was held in Goldsmith v. Lewine, 70 Ark. 516, 69 S. W. 308: "A married woman may mortgage her separate property to secure her husband's debts, whether existing or to accrue." If the wife in this case should be called upon to pay, out of her separate estate, her husband's debts, she would be entitled to be subrogated to whatever rights the bank has as against her husband's estate. By section 57i of the bankrupt act it is provided:

"Whenever a creditor, whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor."

It thus appears that by the very terms of the bankrupt act itself, if the bank should fail to prove its claim against the estate of the bankrupt, the wife would have the right to do it in the bank's name; and, if the bankrupt should probate the claim, the wife would have the right to step in and pay the entire indebtedness of the bank, and be subrogated to the rights of the bank in the estate of the bankrupt.

The action of the referee is therefore vacated and set aside, and an order will be made allowing the claim of the bank for the full amount, with accrued interest.