### In re ARTHUR E. PRATT COMPANY.

(District Court, N. D. New York. September 9, 1918.)

1. BANKRUPTCY ⟨⇒340—CLAIMS—PROOF OF.
   Sworn proofs of claim in a bankruptcy proceeding are prima facie true, and an objector has the burden of overcoming such prima facie case.

2. BANKRUPTCY ⟨⇒342—CLAIMS—OBJECTIONS.
   On objections to a duly proven claim for a balance on a note given by claimant to the bankrupt corporation, which was indorsed by and discounted by it, *held*, that an order rejecting the claim on the ground that the note was given in payment of corporate stock which the claimant received at the time he gave the note was improper, and the matter should be remanded for further hearing.

3. BANKRUPTCY ⟨⇒340—CLAIMS—EVIDENCE.
   Where the trustee in bankruptcy objected to a claim for a balance due on a promissory note given by a claimant to the bankrupt corporation and by it discounted, on the ground that the note was given in payment of stock bought, *held*, that evidence as to the use by claimant of the stock which he received, etc., was admissible.

In Bankruptcy. In the matter of the bankruptcy of the Arthur E. Pratt Company. On review of an order of the referee disallowing the claim of Charles H. Schupp. Order reversed, and matter remanded to referee for rehearing.

Review of an order of the referee disallowing on objections the duly proved claim of Charles H. Schupp for $2,971.10, balance of promissory note given by said Schupp to the Arthur E. Pratt Company, and which was indorsed by it and discounted at New York State Bank at Albany, N. Y., for its own benefit, and which the claimant claims was given to said now bankrupt solely for its accommodation and as a loan, he receiving certain shares of the capital stock of the company issued in his name and an assignment of other shares of such stock, which had been issued to Arthur E. Pratt or Mrs. Pratt individually, as collateral security for such loan. In the proofs of claim it is set forth as a secured claim; the security being specified. The trustee of the bankrupt claims the note was given to the company in payment for the stock of the company so issued to him, not including that assigned to him by Arthur E. Pratt, and that there was an agreement to repurchase, secured by the pledge of the stock issued to Mr. Pratt or his wife.

Tracey, Cooper & Townsend, of Albany, N. Y., for trustees.
Alex. T. Selkirk, of Albany, N. Y. (John W. Searle, of Albany, N. Y., of counsel), for claimant.

---

⟨⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

RAY, District Judge (after stating the facts as above). **[1]** The proofs of claim are in due·form in every respect, and in the absence of proof against its justice and validity such proofs were and are sufficient to establish it as against the objections. The sworn proofs of claim in a bankruptcy proceeding are prima facie evidence of all its allegations, when objected to. Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 584; In re Sumner (D. C.) 101 Fed. 224; In re Shaw (D. C.) 109 Fed. 780; In re Cannon (D. C.) 133 Fed. 839; In re Carter (D. C.) 138 Fed. 846; In re Doty, 5 Am. Bankr. Rep. 58. The Supreme Court expressly holds:

"The words of the statute suggest, if they do not expressly import, that the objector is to go forward (that is, prove the invalidity of the claim, overcome the prima facie case made by the proofs duly verified), and thus that the formal proof is evidence, even when put in issue. The words are: 'Objections to claims shall be heard and determined as soon,' etc. Section 57f. It is the objection, not the claim, which is pointed out for hearing and determination."

The burden of overcoming this prima facie case was therefore on the trustees.

**[2, 3]** But the claimant went forward with proof in addition to the proofs of claim. Mr. Schupp, the claimant, testified that in March or April, 1914, the original note of $4,000 was given; that claimant had an interview with Mr. Pratt, president and treasurer of the company; that Mr. Pratt requested him to purchase stock in the company, and that he declined as he had declined before; that Pratt told him they (the company) needed some ready cash and wanted it quick, and if he would help them out that time they would help him when he got ready to construct his big plant.

"He told me that if I would take out stock that the company would take it back. I told him I couldn't. He said he would give me 83 shares of stock in my name and 64 of his own as security and good will. Q. If you would indorse the note? A. If I would indorse the note. He made out a note for $4,000, and I gave him $700 and·the note for $4,000, and then he said, when I needed the money, he would give it back to me. I said I didn't need it right away, but it would be about a year before I would need it."

It was conceded by the trustees that the note for $4,000 was drawn by Mr. Pratt, signed by the claimant, and delivered to Mr. Pratt, who turned over the stock, 147 shares (the par value of which was $7,350, conceded on the argument and shown by the proof), and that the company discounted the note at the bank and used the money in its business. There is nothing in the testimony of the claimant that indicates other than a loan of this note and $700 cash to the now bankrupt, with these shares of stock given him as security. The claimant is not a lawyer. If he had been, probably the transaction would have been put in different form. The evidence of the claimant substantiates the proofs of claim and makes the case the stronger.

What is there in the case to change or overcome this? Mr. Schupp does not say Mr. Pratt agreed to "buy" the stock back, and such is not the import of his testimony as a whole. The original note of $4,000 was reduced by payments thereon, renewal notes being given, until, February 8, 1916, the balance was $2,900 only. The payments

were all made by the Arthur E. Pratt Company except $345. This is uncontradicted. There is no pretense Mr. Schupp was insolvent, or in financial difficulties, or unable to pay, if this was his note and debt to the bank, or that the company paid the interest and about $800 of principal at the request of Mr. Schupp. Mr. Schupp testified that Mr. Pratt told him, at the time he gave the note, the dividends on the stock would pay the interest on the note. Mr. Schupp was given a check for one dividend of $54. Mr. Schupp was asked:

"And that's the purpose for which it [this dividend check] was used?"

That was objected to as improper, and the objection was sustained. Why was this improper? Why not show that Mr. Schupp used the dividend as agreed or understood it should be used? Then Mr. Hatt, for the trustees, brought out by questions to Mr. Schupp that the 83 shares of stock were in the bank as collateral, put there by Mr. Schupp. As collateral for what does not appear.

The claimant sought to show, and also the circumstances under which pledged at the bank:

"Q. Will you state how you came to pledge it at the New York State National Bank?
"Mr. Hatt: I object to that as immaterial. (Sustained and exception.)"

Then claimant sought to show it was pledged as collateral for the note on which the claim is based. This was objected to, and the objection sustained. Then Mr. Schupp said he did not intend to state, or be understood as saying, the stock was then pledged at the bank. Then he was asked by his counsel:

"Q. Was it at any time pledged with the New York State National Bank in connection with any other transaction than the renewal of the note given by you to the Arthur E. Pratt Company? A. No.
"Mr. Hatt (one of trustees): I object to that as improper, and move to strike out the answer. (Granted.)"

I am unable to understand why this was improper, or on what grounds the objections could be sustained. On the other hand, the evidence was very proper and material.

The claimant offered in open court to return the stock. The referee said: "You evidently have no power to return it." On the evidence it did not so appear. It did appear on the evidence of Mr. Schupp that he loaned this note to the Arthur E. Pratt Company, and that finally, after the Pratt Company had reduced it to $2,900 (voluntarily, so far as appears, except the $300 paid by the maker and claimant, how and why he was not permitted to show), Mr. Schupp paid the renewal note of $2,900, as he was obliged to do so far as the bank was concerned. If, as he claims, he held these shares of stock as collateral security for this loan to the Pratt Company, he was not under obligations to surrender his collateral until paid by the Pratt Company. But, aside from this, he was entitled to show when and where and for what purpose he pledged the stock as collateral. If it was turned over to him as collateral for his signing the note, and to secure him in case he paid the note, why could not he use it as collateral when he renewed the note, without making himself the absolute owner and turning the transaction

into a sale of the stock to Schupp and payment therefor by the giving of the note? This stock is, of course, worthless. The Arthur E. Pratt Company is unable to pay its debts. But suppose the company had been successful, and this stock, worth at least $7,350 at par value when turned over to Schupp, had appreciated in actual value above par; what would have been the position of Mr. Pratt and the company?

Mr. Pratt, the president and treasurer of this company, was sworn as a witness for the trustees; but he did not deny, except by inference, the statements of Mr. Schupp. Neither side asked specific questions involving such denial, however. Mr. Schupp testified that at the time of the original transaction Mr. Pratt gave him a letter showing what it was, and that later he gave that back to Mr. Pratt. When and why does not appear. Mr. Pratt did not deny the letter was returned to him. This question was asked Mr. Pratt, and he gave this answer:

"Q. Will you tell us, as nearly as you can now recall, the facts of that letter that you say you gave Mr. Schupp? A. The letter, as near as I can remember, was in regard to my personal stock, which I had given him as additional security—not given to him outright—only as additional security, and that in case that anything happened to know the stock was to be returned to Mrs. Pratt. If anything happened to me, I wanted to increase the business. Q. That was 64 shares, if that's the correct number, of your own individual stock holding in the Arthur E. Pratt Company? A. That's the fact."

If this company sold Mr. Schupp this stock and took his note for $4,000, with $700 cash, and turned over the stock, it is difficult for this court to understand why Pratt, the president and treasurer, was giving his personal stock as "additional security." "Additional security" for what? Mr. Pratt did not produce the letter, nor claim it was lost or destroyed. Its production would be quite illuminating. Was this "additional security" for the loan of the note, or "additional security" for an agreement to purchase back the stock? "Additional" to what?

The referee placed some stress on the use made by Mr. Schupp of the stock, but did not permit an explanation of that use—its time and purpose and the circumstances under which used. The trustees in their brief and argument on this appeal lay great stress on that use of the stock by Schupp; but what the facts were, under their objections, is concealed from the court. The bankruptcy court is a court of equity, and justice should prevail. As the case stands, the weight of evidence is decidedly with the claimant; but with all the pertinent facts fully developed it might not be.

There was error in restricting the inquiry in the respects mentioned. Mr. Pratt testified in effect he sold the stock to the claimant, and that it was agreed the company would take it back, and that he gave 63 shares of stock as security that it would. If so, the letter would show. If this agreement was made, and the company failed to take the stock back, why is it not indebted to Schupp in the amount of damages sustained for the breach of the agreement? It seems to me that a full and complete inquiry should be made as to all these matters. What has become of the 63 shares of stock turned over to Schupp as "additional security"? It is not even suggested that the stock issued to Schupp in his name was the property of Pratt. It was unissued com-

pany stock, and Pratt was dealing with it. As president and treasurer of the company, he could bind the company in the transaction. To defeat this claim it must be established as a fact on all the evidence that Schupp actually purchased the stock and paid for it with his note and the $700 cash. The order rejecting and disallowing the claim is reversed, and the matter sent back to the referee for a rehearing and trial.

So ordered.