## THOMAS W. ROBINSON *vs.* THOMAS J. MARSHALL.

</div>

The assignee of a claim or *chose in action*, cannot recover from the original debtor who *had paid it* to the assignor after, *but without notice of*, the assignment, and this is the law whether the assigned claim is such a claim or *chose in action*, as is contemplated by the act of 1829, ch. 51, or not.

Where a claim has been paid without notice of any assignment, it is, by such payment, extinguished, so far as regards any liability or obligation upon the original debtor, and any *subsequent promise* by him to the assignee to pay it, is a mere *nudum pactum.*

APPEAL from the Circuit Court for Prince Georges county.

*Assumpsit* brought by the appellant against the appellee, on the 12th of October 1855.    The declaration contained the common counts, and the plea was *non assumpsit.*

The object of the suit was to recover the amount of a distributive share belonging to Mary G. Hatton, in certain real estate sold by the defendant as trustee, which was assigned to the plaintiff in November 1844, and which the defendant, in 1853, *promised to pay* to the plaintiff. At the trial the defence was payment to the assignor, Mary G. Hatton, in March 1847, before and without *notice* of the assignment.

*Exception.* The proof in the case and the prayer granted by the court below, (CRAIN, J.,) at the instance of the defendant, to the granting of which the plaintiff excepted, and appealed, are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Samuel H. Berry,* for the appellant.

The sum sued for in this case, is not such a *chose in action* as is contemplated by the act of 1829, ch. 51, and therefore no *notice* to the appellee was necessary, although from the evidence a notice might fairly be inferred. The suit is not brought on the assignment but on the *promise* of the appellee to pay. By his subsequent promise to pay the plaintiff the sum of money mentioned in the assignment, having made the same with knowledge that the plaintiff was the *bona fide* holder of the assignment. Where a defendant *promises* the assignee, to pay money due under a contract, it will enable the assignee to sue, independent of the act of 1829, ch. 51, upon the *express promise.* 1 *Gill,* 41, *Gordon vs. Downey.* Again, though it is a general rule, that an assignee of a bond is liable to all equities which exist against the assignor, yet there are circumstances which may place the assignee in a better situation than the assignor: the conduct of the obligor, may be such as to deprive him of an equity which he had against the assignor; wherever an assignee is induced to believe by the obligor, that the bond to be assigned will be paid, it would be a *deceit* upon the assignee, to suffer the obligor afterwards to set up as a defence a *concealed equity* existing between him and the assignor. 7 *H. & J.,* 320, *Kemp's Exc'x vs. McPherson;*

2 *Md. Rep.*, 407, *Doub vs. Mason.* Again, the prayer granted by the court below was defective, because there was no proof that the *receipt* and *assignment* were for the *same sums* of money, and a prayer involving any proposition to sustain which there is no proof in the cause, is erroneous. 4 *Md. Rep.*, 454, *Long vs. Eakle.*

*Daniel C. Digges,* for the appellee.

The instruction granted by the court below, leaves the whole case upon the proof taken to the consideration of the jury, who are the exclusive judges, as to the weight of evidence submitted to them, and they came to the conclusion to disregard the evidence of the appellant, and to render their verdict upon the proof of the appellee. This case is in a narrow compass, and requires no authority for its affirmance. It is a plain case upon its face, and the whole proof is submitted to the jury, upon an instruction, the *law* of which is entirely unexceptionable, and supported by an uninterrupted series of decisions on this point.

ECCLESTON, J., delivered the opinion of this court.

In support of this action reliance is placed upon a promise of the defendant, stated in the evidence of Richard T. Robinson, a witness for the plaintiff. This witness says, that, at the request of the plaintiff, he called several times upon the defendant for the payment of the sum of money sued for in this cause; the first time in the year 1853, when the defendant told him to say to the plaintiff, that the claim was all right, he the plaintiff should not lose it, he the defendant would pay the money, and this statement was made by the defendant to witness on all subsequent interviews with witness. Upon the second or third occasion, in addition to the said statement, the defendant requested witness to ask the plaintiff to send him a copy of the assignment to the plaintiff, upon which said indebtedness accrued; "which" the witness then says, "is in the words following, to wit: For value received, I hereby transfer and assign to Nathaniel H. Hatton, his executors, administrators and assigns, all my right, title, claim and interest, which I have in Thomas J. Marshall's possession, supposed to

be one hundred and sixty dollars.   As witness my hand this 20th day of November 1844.   MARY G. HATTON,   (Seal.)

Witness, Alexander G. Hatton.

For value received, I assign the within to Thomas M. Robinson, November 20th, 1844.   NATHANIEL H. HATTON."

The witness goes on to say, which request he made known to the plaintiff, and afterwards, in the fall of the year 1854, at the plaintiff's request, I took said assignment to the defendant, who after examining the same handed it back to witness, and desired him to say to the plaintiff it was all right, to look to him the defendant for its payment, and no one else; that he was going to Upper Marlborough in the course of a few days, and would call at plaintiff's house either on his way to or from Marlborough, and would then settle said indebtedness with plaintiff.

The defendant gave in evidence a receipt in the following words:   "Received of Thomas J. Marshall, trustee appointed by the Chancellor of Maryland, in the case of *Hatton vs. Hatton,* the sum of one hundred and sixty-nine dollars, in full of my interest in the proceeds of sale of the land sold by Thomas J. Marshall, as trustee, as per auditor's report.

March 8th, 1847.                    MARY G. HATTON."

The signature to which receipt was proved to be in the hand writing of Mary G.Hatton.

At the instance of the defendant, the court instructed the jury, that if they found from the evidence, that prior to the time of the conversation testified to by R. T. Robinson, Thomas J. Marshall had paid to Mary G. Hatton the full amount of her interest in the estate of Nathaniel Hatton, sold by said Marshall as trustee, then the plaintiff was not entitled to recover, unless they found that at the time of such payment the said Marshall had notice of the assignment by the said Mary G. Hatton, of her interest in the proceeds of the land of Nathaniel Hatton, sold by him as trustee, provided they found that the assignment by Mary G. Hatton to N. H. Hatton, related to the said estate.

Whether the court were wrong in giving the instruction, is the question presented by this appeal.

The plaintiff's counsel contends, that the assigned claim is not such a claim or *chose in action,* as is contemplated by the act of 1829, ch. 51, and therefore no notice of the assignment was necessary. Consequently the court was wrong in holding that the plaintiff could not recover, unless the jury should find that the defendant had notice of the assignment before he paid the claim to Mary G. Hatton, provided they should find the assignment by her and the payment to her related to the same claim. But if it should be conceded, that the counsel is right in supposing the claim not to come within the provisions of the act referred to, still his conclusion based upon such an interpretation of the act is not correct. On the contrary, the doctrine maintained by the court in regard to notice, would be sound law if the act of 1829 had never been passed.

In 2 *Story's Eq.,* sec. 1047, it is said, "as the assignee is generally entitled to all the remedies of the assignor, so he is generally subject to all the equities between the assignor and his debtor. But, in order to perfect his title against the debtor, it is indispensable, that the assignee should immediately give notice of the assignment to the debtor; for otherwise, a priority of right may be obtained by a subsequent assignee, or the debt may be discharged by a payment to the assignor before such notice."

It has been said on the part of the plaintiff, the suit is not brought upon the assignment, but on the promise of the defendant to pay it after he had seen it; and that promise having been established by proof, the plaintiff had a right to recover, even admitting the claim had been paid by the defendant to Mary G. Hatton, prior to the promise, although he had no notice of the assignment when he made the payment. But we cannot assent to this. The plaintiff was not induced to take the assignment in consequence of any promise, language or act, of the defendant. It was accepted by the former in November 1844, and not until 1853 was the latter notified of it, when six years before he had paid the whole claim to the assignor. Quite time enough to forget that the payment had been made.

The claim being paid without notice of any assignment, it

was thereby extinguished; and any subsequent promise to pay it must be a promise having no consideration to support it, and therefore a mere *nudum pactum.*

When a debt has been extinguished by an actual legal payment, it is as though it never had existed, so far as regards any liability or obligation upon the original debtor. Let us then suppose, that the defendant never was indebted to Mary G. Hatton, and she had undertaken to assign to the plaintiff a pretended claim of hers against the defendant, which the plaintiff accepted, without being induced to do so by any language or act of the defendant. Now, if under those circumstances, in the absence of fraud, and of any *intention* to mislead the plaintiff, the defendant had promised to pay the assignment some years after it had been accepted, surely it could not be successfully contended, that such a promise would create a valid claim against the defendant. And if so, it is difficult to perceive, how the promise relied upon in the present case can entitle the plaintiff to recover.

As an authority in opposition to the defence here relied upon, the plaintiff's counsel has referred to *Kemp's Ex'x vs. McPherson,* 7 *H. & J.,* 320. But this case differs from that very materially. There Joseph Staley, devised his dwelling plantation to his son Jacob, charged with the payment of 2000£, in legacies, to ten of his children. This land the devisee sold to Frederick Kemp, for 2.700£, and gave him a deed for the same. Kemp paid part of the purchase money at the date of the deed, and bonds were given for the residue; some of which were paid by Kemp to Staley, who sold and assigned three of the others to McPherson, and one of them to Mrs. Bierly. When one of the bonds assigned to McPherson became due it was paid by Kemp; after whose decease, his executrix, Dorothy Kemp, was sued upon another of those bonds by McPherson, who obtained a judgment thereon against her. For the purpose of obtaining an injunction upon the judgment, she filed the bill in equity, claiming relief upon the ground, that the land purchased by Kemp was charged with the legacies to Joseph Staley's children, and until it was freed

Robinson *vs.* Marshall.

from them, the payment of the purchase money should not be enforced.

From the statement of the evidence as given by the court, it appears Frederick Kemp had both constructive and positive notice that the legacies were charged upon the land. In his deed from Jacob Staley, it was expressly stated, that Staley was entitled to the land by his father's will. And in the presence of her husband, (Frederick Kemp,) Mrs. Kemp declared "the will was on the table at the time the bonds were executed," which declaration was not contradicted by him.

On page 338, the court say: "These bonds were to be paid at different, and some of them at distant, periods; and yet Kemp, with a knowledge of the incumbrance, ushers them into the world without any intimation on the face of them that they were liable to a charge. This is certainly a concealed equity, and although not of itself sufficient to change the relation of the assignee, is a strong circumstance, with others, to rebut the equity set up against these bonds."

When the deed was executed, and part of the purchase money paid, Kemp was indisposed, and several bonds were executed by his wife and son for the balance; which bonds were regularly paid to Staley as they became due. And, in 1811, Kemp having recovered from his indisposition, the bonds then remaining in the hands of Staley were cancelled, and four others were executed by Kemp, with his son as surety for the amount of them. And the court say: "Were not these circumstances (without the aid of any declarations of Kemp) calculated to convey the impression that Kemp would pay to Staley these bonds as they became due, under a confidence that Staley would discharge the legacies; and is not the testimony conclusive that such was his impression? Staley was his son-in-law, and he was disposed to favor him. He says, 'he trusted Staley because he made such fair promises that he would pay the legacies,' and regrets that he turned out a worthless fellow, and had deceived him." It appears that Mrs. Bierly called twice upon Kemp, relative to these bonds, and had two conversations with him in regard to them; in the first, "he told her she was safe in taking one of them, that he

Robinson *vs.* Marshall.

would pay those bonds,·although he should lose by Jacob Staley;. and afterwards, at his own house, made the same promise, and again complained of his misplaced confidence in Staley."

In concluding their opinion, the court say: "Is it not evident, if Frederick Kemp had lived, he would have never set up this defence against the bonds in the hands of the assignees? One of them became due in his lifetime, and without making any objection, he paid it to McPherson; and his subsequent conduct and promises clearly prove it was his intention to pay them. He had no equity to be relieved against the payment of these bonds, and of course his devisee could derive none from him."

That was a case in chancery, where equities are nicely balanced, and the preponderance, however small, must prevail. And under the equitable circumstances there disclosed in favor of the claim of the assignee, a court of chancery, after he had obtained a judgment, might well refuse to injoin his judgment, because of the concealed equity relied upon by the complainant.

In the case before us there has been neither a judgment nor a bond, but it is merely an action of *assumpsit* in a court of law. And although the plaintiff has proved a promise by the defendants to pay the claim, still the proof shows the promise was made without a consideration for the same; it is, ·therefore, but a *nudum pactum*, and cannot sustain the plaintiff's suit.

We think there was *some evidence* tending to authorize an inference by the jury, that the assignment and the receipt of Mary G. Hatton related to the same claim; and the court having instructed the jury to find whether they did, or did not, relate to the same claim, we do not agree with the plaintiff's counsel in believing there was error in submitting such an inquiry to the jury, upon the ground that there was *no evidence* on which to base that portion of the instruction.

Perceiving no error in the action of the court below, the judgment will be affirmed.

*Judgment affirmed.*