In re STOUT.

(District Court, W. D. Missouri, C. D.    September 17, 1900.)

1. BANKRUPTCY—REVIEW OF REFEREE'S DECISION—FINDINGS OF FACT.
  On review of the decision of a referee in bankruptcy the district court will not reverse his findings of fact unless manifestly erroneous.

2. PRINCIPAL AND SURETY—PAYMENT BY SURETY—RIGHTS AGAINST PRINCIPAL.
  · . The payment of a note by a surety relates back to the signing of the note for the purpose of fixing the date when the indebtedness of the principal to him on account of such payment had its inception.

3. BANKRUPTCY—PLEADING—VARIANCE.
  A court of bankruptcy proceeds under the rules of equity, and, where the ultimate facts which warrant the allowance of a claim to a lien are clearly enough alleged, such allowance by a referee will not be reversed because of an immaterial variance between evidential facts alleged and those proved.

4. EXEMPTIONS—PENSION MONEY—FEDERAL STATUTE.
  Rev. St. § 4747, which exempts money "due or to become due" to any pensioner from seizure on legal process against him, applies to such money only until its payment to the pensioner, and does not exempt property from seizure because purchased with pension money.

5. BANKRUPTCY—CLAIM ENFORCEABLE AGAINST HOMESTEAD—INTEREST
  Where a debt enforceable against the homestead of a bankrupt under the laws of the state has been reduced to judgment, together with the interest thereon, the creditor is entitled to payment from the proceeds of the homestead of the amount of such judgment and interest, but not of the costs of the action.

In Bankruptcy.    On exceptions to decision of referee.

Edmund Burke, for bankrupt.
Hunter & Kraemer, for claimant.

PHILIPS, District Judge.    The sole question in this case is whether or not certain real estate of the bankrupt is exempt as a homestead from the claim of the creditor, Jabez H. Potter.    The referee, John Montgomery, Jr., has found this issue in favor of the claimant. To this action of the referee the bankrupt has filed exceptions, which have been referred to the court for determination.

It is the recognized rule of the federal courts—and especially in matters of bankruptcy—that on review of the decision of a referee, based upon his conclusions on questions of fact, the court will not reverse his findings unless the same are so manifestly erroneous as to invoke the sense of justice of the court.    In re Waxelbaum (D. C.) 101 Fed. 228.    This rule must, of necessity, be observed by the courts where the findings and conclusions of the referee are based upon conflicting testimony.    He sees and hears the witnesses, and his vantage ground is much better than that of the court for determining the credibility of the witnesses and the weight of their testimony.    The principal point of controversy in this case is whether or not the debt of the claimant against

the bankrupt arose prior to his acquisition of the real estate claimed as a homestead. This question of fact depends largely upon the testimony of the claimant and a number of corroborating circumstances, which the court, on examination of the testimony taken by the referee, is of opinion well justified the referee's conclusion. The claimant, Potter, was security upon two notes executed by the bankrupt, given to one Steele in 1873. Steele died, and one Todd became his administrator. Suits were instituted on these notes by said administrator in a justice's court in 1873, upon which judgments were obtained. Potter claims that he appealed from these judgments to the state circuit court, but what became of the appeals the evidence fails to disclose. This, however, is quite a matter of immateriality; the essential question being whether or not Potter, as security, paid these debts of the bankrupt. The contention of Potter is that he afterwards settled these claims with the succeeding administrator of Steele's estate by way of a claim he held against the estate, he having, as he testified, bought up certain interests of the distributee heirs in the estate, and that he settled his indebtedness to the estate in that way. It is true that Todd testifies that Potter never paid him any money on these claims against the bankrupt, and it is also true that the succeeding administrator, Sims, testifies in the same way. But there are many facts and circumstances in the case which tend to corroborate the contention of Potter. In the first place, during all this period, Potter was solvent, and it was the imperative duty, under the statute, of these administrators to proceed to collect all outstanding claims, and to account therefor to the estate. Being charged, presumably, in the inventory of the estate, with these claims, if they had not been able to collect them they would have taken credit therefor on the ground that they were uncollectible. In addition to this, the record in evidence shows that a suit was pending between administrator Sims and Potter in the circuit court of Morgan county in 1878, and that Potter recovered judgment for $50.50, which, by stipulation of the parties, was to be credited on a judgment in favor of the Steele estate against Potter, rendered in said justice court; thus clearly showing that Sims was mistaken when he said he knew nothing about the claim of Potter against the estate, and that he first heard of it in 1884. There is another circumstance that indicates that Potter's contention that he bought up the claims of certain of the heirs is probable, and that is the fact that the testimony of Sims shows that there are some of the heirs with whom he has never settled as to their distributive shares. It is wholly incredible, if these heirs were not conscious of the fact that their claims had passed to some one else, that they would not in all these years have called for their distributive shares. The dealings also between Potter and the bankrupt from 1873 to 1889 show beyond question that the bankrupt recognized the fact that he was during the time indebted to Potter. He was paying Potter money, selling him mules, which were paid for in the way of credits on Potter's claim against him; and in 1889 he executed a note to Potter, which he claims represented the balance then due on the

claim, and which has since passed into judgment, becoming the basis of the allowance made by the referee in favor of Potter against the bankrupt estate. The bankrupt, in his schedule filed herein, schedules the judgment debt in question of September, 1899, "given on renewal of note. * * * The renewal of the note above referred to, as well as of its predecessor, was obtained by Potter from the petitioner by false and fraudulent representations, without consideration,"—thus verifying Potter's contention that the last note was a renewal note; and Potter gives the date of the original note as of 1879. At all events, the inception of the indebtedness had its origin in the notes of the bankrupt to Steele on which Potter was surety. Independent, therefore, of the question as to whether or not Potter paid off these notes in 1878 or 1879, the debt created by the bankrupt in 1873 was the debt for which Potter became his surety. As between the principal and surety, Potter's undertaking was contingent upon Stout's default. The implied contract or obligation was, therefore, raised by law between the surety and the principal that the latter should indemnify the former, "and this implied contract took effect from the date of the surety's signing the note, and not merely from the time he paid the money; the payment in such case relating to the inception of the implied liability." Berry v. Ewing, 91 Mo. 397, 3 S. W. 877.

Question is made by learned counsel of the bankrupt as to a variance between Potter's allegation that his debt against the bankrupt arose in 1878, and his testimony that he first settled the matter with the bankrupt in 1879 by taking his note for the debt, which was renewed in 1889. This is such an inconsequential variance that a court of bankruptcy, proceeding in equity in the administration of bankrupt estates, can attach very little importance to it. It is among the recognized rules of equitable procedure that, where the ultimate facts which warrant a decree or finding for claimant are clearly enough alleged in the bill, "a variance between the evidential facts alleged and those proved, which has not misled or surprised the defendant, nor prevented a fair trial of the issue presented by the proofs, is not fatal to the decree, and will not require its reversal." Burt v. C. Gotzian & Co., 43 C. C. A. 59, 102 Fed. 937. The essential, controlling question in the case is whether or not the claim of Potter against the bankrupt originated prior to his acquisition of the real estate in question. Whether or not, therefore, the claim originated in 1878 or 1879 or 1880 would not affect the issue, the bankrupt having acquired the land not earlier than 1882. Such technicality would be a "sticking in the bark." The statute (section 2695, Rev. St. Mo. 1879) then in force expressly declared—as does the statute of to-day—that the homestead shall be subject to attachment and levy upon execution upon all causes of action existing at the time of the acquiring of such homestead. except as therein otherwise provided; and for this purpose such time shall be the date of the filing, in the proper office for the records of deeds, the deed of such homestead. The succeeding section exempts from such execution a homestead subsequently acquired, provided that such other homestead shall have been ac-

quired with the consideration derived from the sale or other disposition of such prior homestead, or with other means not derived from the property of such housekeeper or head of a family. There is no pretense in this case that the bankrupt, Stout, had a prior homestead the proceeds of which went into the land in controversy. But his counsel directs attention to the closing language last above quoted, to wit, "with other means not derived from the property of such housekeeper or head of a family." The court does not feel called upon to give construction to this phraseology in all of the possible phases of its application. It is invoked here in argument by counsel in support of his offer after the case was closed before the referee to reopen it in order to introduce evidence to show that part of this land, at least, was purchased with pension money collected from the government by the bankrupt. Even had the referee reopened the case,—which was a matter largely in his sound discretion,—and the bankrupt had been able to show that part of the purchase money for this land was the proceeds of his pension money, it would not have availed, as it would not have been "other means, not derived from the property of such housekeeper or head of a family." The only statute known to the court bearing upon the inviolability of a pension is section 4747, Rev. St. U. S., as follows:

"No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

"This section does not purport to protect money after it has inured wholly to the benefit of the pensioner, but to protect it while in the pension office, or in the hands of its agents or officers, and while in the course of transmission to the pensioner." Martin v. Bank (Vt.) 14 Atl. 649. When Stout had collected his pension money, and put it into the land, it was his property to do with as he pleased, and the immunity given to it by the federal statute had then ceased.

It is suggested in the argument of counsel for the bankrupt that no reply was filed to his answer made to the exceptions interposed in the first instance by Potter to the action of the trustee in not setting aside· his homestead as exempt, and the like. Such criticism misconceives the character of this proceeding, and the office of such exceptions. The referee, on the hearing before him, held that the homestead is not exempt as against the claim of Potter. The bankrupt had a right to except to this finding of the referee, and without further pleading the referee could have referred the matter to the court, with the proceedings had and evidence taken before him. This was done. Thereupon the court, without more, proceeds to pass upon the exceptions filed by the bankrupt to the disallowance of his demand to have this land set apart as a homestead.

It is finally suggested by the exceptor that in the claim of Potter allowed by the referee there was included interest and costs.

The evidence shows that the claim of Potter against Stout was, prior to the adjudication in bankruptcy, reduced to a judgment in the circuit court of Morgan county. This judgment, with accrued interest and costs in said suit, was allowed as a claim against the bankrupt estate. This is unobjectionable, but the question is whether said costs should go into the computation of the claim, to be paid out of the homestead property. I am of the opinion that it should not, and the order of the referee will be modified in this respect.

It results that, with the exception above indicated, the exceptions of the bankrupt are overruled, and the findings of the referee affirmed.