Strafford,
Dec. 2, 1919.

ANNA MORENCY, *Adm'x*, v. VITALINE LANDRY, *Ex'x*, *Ap'ee.*

Under the bankrupt act, a judgment held by a foreign creditor, if properly scheduled, is barred by the discharge.

Though an action for reimbursement by a surety who has paid a joint judgment against himself and his principal may be barred by limitation, he may be subrogated to the rights of the judgment creditor; but such surety, in the bankruptcy of his principal, is not entitled to notice as a judgment creditor unless his claim thereunder was known to the bankrupt.

PROBATE APPEAL, from the report of the commissioner on the estate of Narcisse Landry. Landry was a resident of St. Marie in the Province of Quebec in 1899, when he gave J. A. Morency, the

plaintiff's intestate, a note, which Morency discounted at the local bank. As the note was not paid at maturity, the bank sued both Landry and Morency and recovered judgment against them in 1900.

Morency paid the judgment in 1902 and his administratrix is now attempting to enforce it against Landry's estate. Landry subsequently emigrated to this state, filed a voluntary petition in bankruptcy in 1906, received a discharge in due course and died in 1912. In the bankruptcy proceedings Landry included this claim in his schedule of liability stating the creditors under the claim to be F. Morency, F. Morency & Co., and the bank.

The court found on evidence that notices to these creditors were duly mailed, that both J. A. Morency and the bank had actual notice of these proceedings and dismissed the appeal subject to the plaintiff's exception. Transferred from the February term, 1918, of the superior court by *Branch,* J.

*Snow, Snow & Cooper* (*Mr. Cooper* orally), for the plaintiff.

*Hughes & Doe* and *Fred H. Brown* (*Mr. Doe* orally), for the defendant.

PEASLEE, J. The bankruptcy act of July 1, 1898, provides that "a discharge in bankruptcy shall release a bankrupt from all of his provable debts," duly scheduled by the bankrupt, with the name of the creditor if known, with certain exceptions not material here. *s.* 17 *a.* The act also refers in terms to the claims of those residing outside the United States, as entitled to share in the dividends declared. *s.* 65 *d.* The plain conclusion from these provisions seems to be that debts due to non-resident creditors, when properly scheduled, are discharged, so far as congress has the power to enact that such a result shall follow. That congress has the power to so provide, as far as future proceedings in this country are concerned, has not been questioned and is not open to doubt.

But it is argued that while congress might enact such a law it has not done so. The chief contention made in favor of this conclusion is that prior to the enactment of the present statute earlier bankruptcy acts containing provisions of similar purport had been construed as not affecting the right of the non-participating foreign creditor to thereafter maintain a suit in our courts. Hence it is said that congress intended to express a like purpose here.

The claim that prior to 1898 similar provisions in earlier bankruptcy laws had been authoritatively construed favorably to the plaintiff's contention, is not borne out by the cases cited. The question has never been passed upon by the supreme court of the United States. The case in that court which is relied upon (*Ogden* v. *Saunders*, 12 Wheat. 213) raised questions as to the constitutional limitation upon the power of the several states to enact insolvency laws. No question of the meaning of any national bankruptcy law or of the power of congress to enact the same, was involved, and the subject was not considered.

*Phelps* v. *Borland*, 103 N. Y. 406, deals with the effect to be given here to a discharge of a foreign debtor in his own country. It does not involve the question now under consideration, and the matter is not referred to in the opinion.

In *Lizardi* v. *Cohen*, 3 Gill (Md.) 430, the question was whether a discharged bankrupt was a competent witness as to a London contract. It was held that the contract was not discharged and that therefore the witness was interested and incompetent. The decision is put upon the ground stated by Judge Story (Confl. Laws, *s.* 342) "that a discharge of a contract by the law of a place where the contract was not made, or to be performed, will not be a discharge of it in any other country." It does not discharge the obligation so as to make the debtor disinterested. He is still liable in the "other country." Whether the debt was discharged locally was a question not necessary to the decision and not discussed.

The only case cited holding that under the bankruptcy law of 1867 a discharge did not bar a subsequent suit here by a foreign creditor is *McDougall* v. *Page*, 55 Vt. 187, decided in 1882. But it was admitted in the opinion that the holding was contrary to the decisions in other states and that the question had not been passed upon by the supreme court of the United States. Add to this the facts that two judges dissented from the Vermont decision and that in 1884 still another decision opposed to it was announced (*Moore* v. *Horton*, 32 Hun 393) and it becomes evident that there was not, in 1898, any authoritative interpretation of the act of 1867, such as is now claimed. The matter had not been passed upon by the court of last resort, and the views of others were conflicting.

So far as the authorities go, their weight is against rather than for the plaintiff, upon the issue of how the earlier laws had been understood at the time the present law was enacted.

The argument that a law making the discharge efficient locally

as to a foreign creditor gives the domestic creditors undue advantages, compels the foreign creditor to pursue his debtor into other lands and undertakes to make a foreign discharge effective in another country where the creditor resides, is based upon a misconception of the effect of the discharge, so far as it relates to foreign creditors who do not participate in the bankruptcy proceedings. Such creditors are not thereby compelled to pursue their debtor into foreign lands. But if they do so pursue him they are bound by the limitation of remedy which applies to those resident there. Neither does the law undertake to make the discharge effective against the creditor in proceedings brought at his place of residence in Canada. It merely places him on an equality with our own citizens in proceedings in our courts. It is manifest that such a law is not so devoid of just principle that it is always to be inferred that there was no intent to enact it.

It has recently been declared that the object of the bankruptcy law is not merely to distribute the debtor's property equitably among the creditors "but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts. . . . Our decisions lay great stress upon this feature of the law. . . ." *Stellwagen* v. *Clum*, 245 U. S. 605, 617.

The plaintiff's argument is based upon an erroneous assumption as to the state of the law in 1898, and takes a narrow and mistaken view of the purposes intended to be effected by the legislation in question. The statute plainly applies to the case in hand, and the plaintiff's rights here are no greater than they would be if the creditor had resided in the United States. 2 Lov. Bank. s. 743; Bump Bank. p. 713; Black Bank. s. 723; *Ruiz* v. *Eickerman*, 5 Fed. Rep. 790; *Zarega's Case*, 4 Law Reporter, 480.

As the judgment recovered by the bank is a provable debt (s. 65 *d*), the right of the bank to recover on it is barred by the discharge. The plaintiff cannot recover on the note, or for money paid upon the judgment, because such claims are barred by the general six year limitation. She can recover only through the bank judgment. *Stavrelis* v. *Zacharias*, *ante*, 146.

If it can be found that equitably the judgment belonged to J. A. Morency, and that he had the right to prosecute it in the bank's name, the plaintiff can answer the discharge only upon the ground that the bankrupt failed to name Morency as the creditor under the judgment. In order to impose that duty upon the bankrupt, it must appear that he knew of the change in the equitable title. It is not

the bankrupt's duty to notify the assignee, until the assignee has performed his duty of notifying the bankrupt. "Upon an assignment being made, it becomes the duty of the assignee to notify the debtor." *Thompson* v. *Emery*, 27 N. H. 269, 272; *Hellen* v. *Boston*, 194 Mass. 579. While the mere fact of the surety's payment of the debt may be treated as constituting an equitable assignment of the rights incident to the original claim in the hands of the creditor, equity does not relieve the surety from the performance of his equitable duty to inform the debtor of the change in the situation. Until such notice is given, it is the debtor's right to treat the original creditor as the one to whom he owes a debtor's duties. And aside from this general common law rule, the provision of the bankruptcy act requiring the scheduling of the names of creditors "if known" plainly implies that one who has become a creditor without the knowledge of the bankrupt cannot complain because the claim is not scheduled as owing to him.

The cases "almost uniformly hold that where the bankrupt is sued on a debt existing at the time of filing the petition, the introduction of the order makes out a *prima facie* defence, the burden being then cast upon the plaintiff to show that, because of the nature of the claim, failure to give notice or other statutory reason, the debt sued on was by law excepted from the operation of the discharge." *Kreitlein* v. *Ferger*, 238 U. S. 21, 26. The same rule was announced in this state as applicable in proceedings under similar provisions contained in the national bankruptcy law of 1841. *Cutter* v. *Folsom*, 17 N. H. 139; *Wiggins* v. *Shapleigh*, 20 N. H. 444.

This imposed on the plaintiff the burden of offering evidence tending to show that Landry, when he filed his petition, knew Morency's relation to him as a creditor through the bank judgment. No such evidence was offered and there was no error in the order dismissing the appeal. This conclusion renders it unnecessary to consider whether the mailing of notices to F. Morency and F. Morency & Co. authorized the finding that J. A. Morency had actual knowledge of the proceedings.

*Exception overruled.*

All concurred.