## WALTON v WILKINS

No 2235.   Decided March 21, 1933

N. L. Greenlee, Columbus, for plaintiff in error.

Warren E. Bigony, Columbus, for defendant in error.

HORNBECK, PJ.

The error claimed by Walton is based upon the following propositions:

1. Notice of the bankruptcy proceedings to The Ideal Laboratories Company will support a discharge of the debt evidenced by the trade acceptance held by The Davenport Morris Plan Bank and will, therefore, bar the claim of the solvent partner who was also liable on such debt.

2. That the defendant in error, Wilkins, had a provable debt or claim which he could have set up in the bankruptcy proceedings, such provable debt arising from the claim of The Davenport Morris Plan Bank.

The theory of Wilkins, defendant in error, is that inasmuch as Walton did not set up his discharge in bankruptcy in the action of the Davenport Morris Plan Bank against the partnership he can not be heard to assert it now against his former partner. We have been favored with very helpful briefs by respective counsel, but each proceeds on the theory that a strong offense is the best defense as neither offers any citation of authority in answer to those cited by the other.

It will be noted that the Davenport Morris Plan Bank, the holder of the trade acceptance at the time of the filing of the petition, was not listed as a debtor of the bankrupt. However, in so far as it appears, the bankrupt did not know of the assignment of the trade acceptance from the Ideal Laboratories Company to the Davenport Morris Plan Bank. A listing of the claim in the name of the Ideal Laboratories Company would seem to be sufficient notice to the Davenport Morris Plan Bank. The identity of the claim was known to the partner Wilkins.

It is said in Morency v Laundry (N.H.) 108 Atl. 855; 9 A.L.R. 123, page 126, syl:

"It is not the duty of the bankrupt to notify the assignee (of a note against bankrupt), until the assignee has performed his duty of notifying the bankrupt. 'Upon an assignment being made it becomes the duty of the assignee to notify the debtor'."

Citing Thompson v Emery, 27 N. H. 272; Hellen v Boston, 194 Mass., 579, 80 NE 603.

In Kreitlein v Forger, 238 U. S., 21, it is held that the burden of proving that the bankrupt had knowledge of the holder of the evidence of the debt against the bankrupt at the time of filing the petition in bankruptcy is on the claimant. We thus determine that the listing of the trade acceptance in the name of the original holder thereof, the Ideal Laboratories Company, was a sufficient notice to the assignee, the Davenport Morris Plan Bank. Wilkins' right of subrogation was from the Davenport Morris Plan Bank and as he had knowledge of the identity of the claim, the notice as given by the bankrupt would be sufficient to bind Wilkins as he was listed as a creditor.

The next question is, what was the status of Wilkins upon his notice as a creditor in the bankruptcy proceedings. If his obligation as a partner with Walton on the trade acceptance was between him and Walton that of a surety, then under §57i of the Bankruptcy Act of 1903, if the holder of the trade acceptance did not prove its claim Wilkins, as surety, could have made proof of the claim in the name of the holder thereof. §57i of the Bankruptcy Act provides:

"Whenever a creditor, whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor."

A number of cases are cited by counsel for Walton as authority for the proposition that a partner jointly liable on a debt of the partnership stands in relation as surety for the payment of that portion of the claim due from the other partner. Some of the cases cited are not so broad in the law enunciated. Fernald v Clark (Me.) 24 Atl., 822, a partner had sold his interest to his co-partner, who had assumed and agreed to pay the partnership debts. The court at page 823 says:

"This assumption of the debts of a partnership by the co-partner made the partner, as between them, a surety only and therefore, in bankruptcy proceedings of the co-partner, the partner was in position to prove a claim of a creditor against the partnership."

And also, the case of William M. Fisher v Horace Tifft et, 127 (Mass.) 313, Syl. A and B were partners. A retired. B assumed debts of the partnership. Creditor of firm recovered judgment against both A and B. B filed a petition in bankruptcy under the U. S. St. of March 2, 1867, and obtained his discharge and A subsequently paid the creditor a sum of money in settlement of the judgment. Held, that A's claim against B on the bond was provable under Paragraph 19 of the Bankrupt Act and was barred by B's discharge. At page 314 Morton, J, says:

"It is true that the plaintiff was liable to the creditors of the old firm of H. Tifft & Co. at law as co-debtor with the bankrupt. But when the partnership was dissolved, and the bankrupt promised to pay all the debts of the firm and gave the bond in suit, the relations between them were changed. As between themselves, in equity, the defendant became the principal debtor, the debt became his debt, and the plaintiff was his surety."

It will thus be noted that in both of these cases and others cited there was a fact present not found in the instant case, namely, that the remaining partner had assumed and agreed to pay the obligations of the partnership. However, In re Carter (Ark.) 138 Fed. 846, the wife was a joint maker on note of husband to bank. Husband adjudged a voluntary bankrupt. Held, wife had a provable claim in bankruptcy proceedings, although she had not paid the note, under §57i of the Bankrupt Act. The court at page 848 says:

"It thus appears that by the very terms of the bankrupt act itself, if the bank should fail to prove its claim against the estate of the bankrupt, the wife would have the right to do it in the bank's name; and if the bankrupt should probate the claim, the wife would have the right to step in and pay the entire indebtedness of the bank, and be subrogated to the rights of the bank in the estate of the bankrupt."

This authority very closely parallels the situation in the instant case. Wilkins, a partner and joint maker of the trade acceptance of the partners to the Ideal Laboratories Company, would seem to be in the status of a surety for that portion of the claim for which his partner, Walton, was liable and could have proved the claim of the Ideal Laboratories Company if it or its assignee failed to do so.

It would seem that Wilkins was put upon notice, that as Walton was bankrupt and he, Wilkins, was a joint maker on the trade acceptance, he would in all probability be called upon to pay some part or all of Walton's obligation on the claim. He had such an interest as would prompt him to protect his liability on this claim insofar as it could be worked out in the bankruptcy proceedings.

If this claim of Wilkins was contemplated in the schedule of the bankrupt it is included in the bankrupt's discharge, whether the creditor proves it or not. 7 C.J. 399. In re Kuffler (N. Y.) 153 Fed. 667; Dycus v Brown (Ky.) 121 SW 1010.

"A discharge in bankruptcy releases the bankrupt from all of his provable debts save such as are excepted by the Bankrupt Act." 7 C.J. 397.

It is said in In re Stout (Mo.) 109 Fed. 794, that:

"The payment of a note by a surety relates back to the signing of the note for the purpose of fixing the date when the indebtedness of the principal to him on account of such payment had its inception."

But, although Wilkins had a provable claim, i.e. the trade acceptance to the Ideal Laboratories Company, it was not an allowable claim until he had paid the trade acceptance and it could be determined what proportion thereof should be chargeable to Walton. That there is a distinction between a provable and an allowable claim is recognized in Gilbert's Collier on Bankruptcy, 1927 edition, page 737 and the court

has ample power on its own motion to postpone a determination of the allowance of a claim until the amount due can be determined. A full and comprehensive discussion of provable claims as distinguished from allowable claims is found in, In re Hornstein (N. Y.) 122 Fed. 272-3-4. The court at 273 of the opinion speaking through Ray, District Judge, says:

"It will be noted that the proof of a claim is one thing, and the allowance of such claim is quite another thing. Claims may be proved, but not allowed. They may be provable, but not allowable. They may be provable, and then allowed in part only, or on condition only."

At 274:
"The proof of a claim must not be confused with the 'allowance' of the claim. Those are two distinct acts or proceedings, and the allowance, absolute or conditional, may or may not result from and follow the proofs of the claim."

Wright et v Rumph (Tex.) 238 Fed. 138, was a case wherein one of several joint makers of a note declined to pay his pro rata share and the other joint makers discharged the note, paying equal shares. The court held that each of such makers acquired a separate action against that maker declining to pay his share and while each maker is liable for the whole amount they are liable among themselves only for their proportionate shares and are bound to indemnify any other maker who may pay more than his share. In this situation it was held that in an involuntary petition in bankruptcy against the defaulting maker of the note the other makers who had paid their respective shares were creditors with provable claims within the true intent and meaning of the bankruptcy act.

Williams v United Fidelity and Guaranty Company (Ga.), 35 Supreme Court Reporter, 289, 236 U. S., 549, arose from the following facts: Williams and Carr, as partners, contracted with school trustees to construct a building with defendant company as surety. The surety, in writing, agreed to indemnify the Guaranty Company against all loss, etc., resulting from any default of the partnership. The partners abandoned the contract. The trustees took possession of the building and completed the structure, made demand upon the surety company for the amount expended over the contract price, brought suit and recovered judgment against the company, which judg-ment was satisfied by payment thereof by the surety company. Prior to the recovery of the judgment the partners filed voluntary petitions in bankruptcy, were adjudged bankrupts, schedules specified the building contract, its breach and the bond; the trustees proved their claim, it was allowed. Prior to the judgment entry against the Guaranty Company, the petitioners were discharged in bankruptcy. The surety company, years thereafter, instituted an action against the members of the partnership upon the indemnity agreement between the partners and the surety company and asked judgment for the amount paid in satisfaction of the judgment in behalf of the school trustees. The trial court held that:

"The bankrupts owed the surety nothing at the time the petition in bankruptcy was filed, because the surety had paid nothing for their benefit, and the relation of debtor and creditor did not exist between them until after actual payment by the surety. * * * The surety had no claim against the bankrupts which it could file in its own name. * * * The liability to the surety by the bankrupts was altogether contingent and might never have arisen."

The Supreme Court of the United States, in reversing the trial court and the Court of Appeals, held that the claim of the surety company was a provable claim, cites and quotes §57i of the bankrupt act and General Order 21-4, pages 290 and 291 of the opinion:

"The claims of persons contingently liable for the bankrupt may be proved in the name of the creditor when known by the party contingently liable. When the name of the creditor is unknown, such claim may be proved in the name of the party contingently liable; but no dividend shall be paid upon such claim, except upon satisfactory proof that it will diminish pro tanto the original debt." * * *

"Within the intendment of the law provable debts include all liabilities of the bankrupt founded on contract, express or implied, which, at the time of the bankruptcy, were fixed in amount or susceptible of liquidation. * * * It provides complete protection and an ample remedy in behalf of the surety upon any such obligation. He may pay it off and be subrogated to the rights of the creditor; if the creditor fails to present the claim for allowance against the estate he may prove it; and in any event he has abundant power by resorting

to the court or otherwise to require application of its full pro rata part of the bankrupt's estate to the principal debt. To the extent of such distribution the obligation of the bankrupt to the surety will be satisfied. * * * It would be contrary to the basal spirit of the bankrupt law to permit a surety by simply postponing compliance with his own promise in respect of a liability until after bankruptcy, to preserve a right of recovery over against his principal, notwithstanding the discharge would have extinguished this if the surety had promptly performed as he agreed. Such an interpretation would effectually defeat a fundamental purpose of the enactment."

The court held that the discharge plead by the bankrupt constituted a good defense against the claim of the surety company as it had a provable claim in the bankruptcy proceedings.

For the foregoing reasons we are of opinion that Wilkins had a provable claim against Walton in his bankruptcy proceedings; that failing to make such proof it was barred by the discharge of the bankrupt and as it is plead in the instant action of Wilkins v Walton it is a bar to recovery.

The judgment of the trial court will be reversed and judgment entered for plaintiff in error for costs.

KUNKLE and BARNES, JJ, concur.