**In re Dorothy M. BRANTLEY, Debtor.**

**Dorothy M. BRANTLEY, Plaintiff,**

**v.**

**Sharon A. WEEKS, et al., Defendants.**

**Bankruptcy No. 81–2–2901–SD.**
**Adv. No. 87–0260B.**

United States Bankruptcy Court,
D. Maryland.

May 4, 1990.

Lawrence O. Burman, Baltimore, Md., for debtor/plaintiff.

Christopher R. VanRoden, Owens & Robertson, P.A., Baltimore, Md., for defendants.

## MEMORANDUM DECISION

### (amended)

E. STEPHEN DERBY, Bankruptcy Judge.

In this adversary proceeding the debtor, Dorothy M. Brantley, filed a complaint to recover $7,227.15 collected from her by defendants on a discharged debt. She contends the actions of defendants violated the permanent injunction against collection of discharged obligations imposed pursuant to 11 U.S.C. § 524(a)(2).

### Facts

On November 20, 1978, debtor and her former husband signed a note for $7,000.00 payable to the order of William F. Neveker or his assigns in connection with buying out Mr. Neveker's interest in a retail gift shop known as Something Unique, Inc. The note was payable without interest in two installments, namely, $4,000.00 on January 2, 1980 and $3,000.00 on January 2,

1981. The note contained a confessed judgment clause. (JX-1)

Debtor's business did not do well. Only $2,000.00 was paid on the note. On February 2, 1981, defendant Harvey B. Weeks, an attorney, wrote debtor about payment of the note. (JX-2) After reminding her he had previously written at the direction of Mr. Neveker, Mr. Weeks stated: "I have been instructed to do what is necessary to collect the $5,000.00 past due." He then closed by advising debtor: "If I do not hear from you by Friday, I am prepared to file the necessary papers in District Court." As of the date of this letter, it is a fair conclusion that defendant Harvey Weeks was advising debtor he was representing Mr. Neveker in collection of the note.

Mr. Neveker, for personal reasons, was reluctant to pursue collection of the note by filing suit. Consequently, under date of February 9, 1981, he assigned the note to defendant Sharon A. Weeks for $5.00 and other good and valuable considerations. (JX-3) Other considerations appear to have included a share of any recovery.

A confession of judgment was filed by defendant Sharon Weeks in the District Court for Baltimore County on March 12, 1981, and a judgment by confession for $5,000.00, plus costs and $250.00 attorneys' fees, was entered on March 16, 1981. (JX-4) Debtor says she did not know of the lawsuit until 1986, and the record supports debtor's testimony because it does not show a valid return of service. (JX-4; see JX-5, Para. 3) Nevertheless, a judgment and notice of lien were filed in the circuit court judgment docket on or about April 24, 1981. (JX-4; JX-5, Para. 2) Debtor admits she may not have picked up certified mail addressed to her at that time. However, the defendants Weeks knew where debtor lived. They attempted to visit her at home later that spring.

Brehm Savings & Loan Association foreclosed and sold debtor's home at public auction in September, 1981. Brehm bought the property in at the foreclosure sale. No proceeds were available for other creditors. The defendants, Mr. and Mrs. Weeks, knew of the foreclosure because Mr. Weeks filed a pleading on behalf of Mrs. Weeks to share in any distribution made in that foreclosure proceeding. (JX-5) However, Mr. Weeks did not certify service of his pleading in the foreclosure proceeding on debtor. (JX-5)

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 16, 1981, which initiated this case. A notice thereof to all listed creditors was sent by the court on November 24, 1981. William F. Neveker was listed and scheduled as an unsecured creditor, but defendant Sharon Weeks, the assignee of his note, was not. Debtor also did not include the confessed judgment action in her list of suits, executions and judgments in her statement of affairs. The case was a no asset case, and there was no distribution to creditors.

On June 21, 1982 debtor was granted a discharge, and the case was closed on August 5, 1982. The order of discharge contained the following injunction:

"... it is ordered that

 * * * * * *

"3. All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from commencing, continuing or employing any action, process or act to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived."

All listed creditors were notified of the discharge by the clerk. Mr. Neveker acknowledged he had received notice of debtor's bankruptcy, but he never told Mr. or Mrs. Weeks. He did not wish to be chastised for leniency or subjected to a comment of "I told you so."

In her bankruptcy case, debtor did not schedule any interest in real property. Consistently, she did not claim as exempt any equity in real property, nor did she institute any action to avoid either the judgment or judgment lien of defendant Sharon Weeks. At the time of filing she

did not own her house because it had been foreclosed.

Brehm Savings & Loan Association was apparently not successful in reselling debtor's home. Regardless of the reason, debtor repurchased the home from Brehm after she had filed her bankruptcy case, but before her discharge. Debtor alleges the repurchase was in May, 1982.

On January 14, 1986, debtor sold the house. The title company settlement officer learned of Sharon Weeks' judgment lien and contacted the Weeks to obtain a payoff figure. Thereafter, debtor spoke with Mr. Harvey Weeks, advised him of her prior bankruptcy, argued the note debt had been discharged, was told the judgment remained in force because she had repurchased the house, and unsuccessfully tried to negotiate a settlement. Debtor accepted, after a strong protest, the payment being made to Mrs. Weeks rather than lose the sale. As a result, defendant Sharon Weeks collected $7,227.15 from the settlement proceeds, of which a substantial portion was ultimately paid over to Mr. Neveker. Mr. Neveker estimated he was given the principal amount of $5,000.00, while Mr. Weeks testified it was ⅓ to ½.

Debtor's motion to reopen her bankruptcy case was granted on September 18, 1987; and the subject complaint was filed on September 30, 1987.

### Conclusions

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) because it involves a claim for violating the discharge injunction of 11 U.S.C. § 524(a), and it thus arises under the Bankruptcy Code. As such, the matter has been automatically referred to the bankruptcy judges of this district by the U.S. District Court for the District of Maryland. Local District Court Rule 402 (Md. 7/89). See 28 U.S.C. § 157(a). Further, this is a core proceeding since it involves the debtor's discharge, dischargeability of a debt, and the adjustment of the debtor-creditor relationship. 28 U.S.C. §§ 157(b)(2)(I), (J) and (O).

At the time debtor filed her bankruptcy case on November 16, 1981, she did not own her house, and indeed she did not own any other real property. Therefore, there was not then any real property to which the State judgment lien of defendant Sharon Weeks could attach. The lien did not reattach to the house, if at all, until after debtor's bankruptcy filing when she repurchased the house from Brehm Savings & Loan.

 Prior to her bankruptcy discharge on June 21, 1982, debtor did not have actual knowledge either of the assignment of the note from Mr. Neveker to Mrs. Weeks or of the confessed judgment by Mrs. Weeks. Therefore, she was not bound to include Mrs. Sharon Weeks on her schedule of creditors in order to qualify for a discharge of her personal liability for the debt. A debtor may schedule a debt in the name of the original creditor of an assigned debt unless the debtor has actual knowledge of the assignment, and the assignee of a debt has the burden to show debtor had actual knowledge of an assignment in order to except the debt from discharge where the assignee was not scheduled. 3 *Collier on Bankruptcy*, (15th ed.1988) para. 523.13[3]. *See also Morency v. Landry*, 79 N.H. 305, 108 A. 855, 9 ALR 123, 126–27 (1919); *Cleveland v. Summerfield*, 194 Ark. 727, 109 S.W.2d 438, 440 (1937).

The assignee, Mrs. Weeks, had the duty of notifying debtor of the assignment, and she has not proved either that she provided such notice to debtor or that debtor had actual knowledge. See the seminal case in Maryland of *Robinson v. Marshall*, 11 Md. 251 (1857) (an assignee cannot recover from a debtor who paid the assignor without notice of the assignment). *Accord, Lambert v. Morgan*, 110 Md. 1, 26–27, 72 A. 407 (1909) (indispensable that assignee immediately give notice of assignment to debtor as debt may be discharged by payment to the assignor prior to such notice).

 Since debtor listed the original noteholder on her bankruptcy schedules, since the original noteholder admitted receiving notice of debtor's bankruptcy case, and since defendant assignee of the note

failed to put debtor on actual notice of the assignment, debtor's discharge was effective to discharge her from personal liability on the note. However, debtor did not record the discharge among the judgment records of Baltimore County, and debtor did not avoid the judgment lien. Consequently, the judgment lien of defendant Sharon Weeks remained a judgment of record pursuant to State law. Whether the judgment was subject to collateral attack because of the failure to serve debtor is a matter to be determined under State law.

■ When debtor repurchased her house in 1982, the judgment lien had reattached by operation of Maryland law. Md.Ann. Code, Courts and Jud. Proc. Article, § 11–402(b). Although debtor's bankruptcy case was still pending, and the lien may have reattached in violation of the automatic stay of 11 U.S.C. §§ 362(a)(1), (5) and/or (6) and have been avoidable, the reattachment of the lien was not a wilful violation of the automatic stay because it was not the result of action by any entity, but rather the result of operation of law. It was also done without contemporaneous knowledge by any party to this adversary proceeding.

Debtor's discharge in bankruptcy had the following effects on the actions at issue here. The debtor was discharged "... from all debts that arose before the date of the order for relief ...", namely, the date her bankruptcy case was filed on November 16, 1981. 11 U.S.C. § 727(b). The discharge included the subject note. By virtue of the prior conclusions herein, and because exceptions to discharge are to be strictly construed against the creditor in favor of the debtor in order to protect a debtor's fresh start, *e.g.*, *In re Wade*, 43 B.R. 976 (D.Colo.1984), the only potentially applicable exception to discharge of the note indebtedness, namely, 11 U.S.C. § 523(a)(3) (failure to list or schedule a creditor), is not applicable because the existence of the assignment of the note to Mrs. Weeks did not satisfy the statutory prerequisite of being "... known to the debtor, ...." *Id.*

The effect of the discharge of the obligation represented by the note held by Mrs. Weeks as assignee is set forth in 11 U.S.C. Section 524. That section provides, *inter alia:*

Section 524. Effect of Discharge.

"(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived; [and]

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; ...."

■ By virtue of the federal Bankruptcy Code and the court's order of discharge, therefore, the discharge of the debtor voided the confessed judgment of debtor's personal liability to defendant Sharon Weeks. The discharge also acted as an injunction against any act to collect the debt as a personal liability of the debtor. Once defendant Harvey Weeks learned early in 1986 of debtor's discharge in bankruptcy, he should not have proceeded any further on the judgment or to collect the debt. He was enjoined. Since he was the agent and attorney for defendant Sharon Weeks in this matter, she was also bound by his knowledge and enjoined from collecting the debt. By the terms of the statute, and this court's order, debtor's consent under protest to the payment did not insulate defendants because the avoidance of the confessed judgment and the injunction were effective "... whether or not discharge of such debt is waived; ...." 11 U.S.C. §§ 524(a)(1) and (a)(2).

Defendant Sharon Weeks' collection of the debt on the confessed judgment was in violation of the injunction and was on a judgment for a debt that had been voided by debtor's discharge. The actions of de-

fendant Harvey Weeks in helping Sharon Weeks to collect this confessed judgment were deliberate, knowing, and in violation of the discharge of debtor and the injunction. They were without any legal basis because the confessed judgment had been avoided, and they injured debtor. Therefore, in this adversary proceeding judgment will be entered jointly and severally against Harvey and Sharon Weeks for the full amount collected of $7,227.15. Judgment in this amount is the minimum necessary to cure defendants' violations of the discharge injunction by restoring to debtor the money wrongfully collected from her.

■ In determining the availability of prejudgment interest and the applicable interest rate, the Court must first decide whether the complaint is based on state or federal law. Bankruptcy Code Section 524 (Effect of Discharge) provides the legal basis for the instant complaint. Since defendants' liability for their collection of money from the debtor on a discharged debt arises under 11 U.S.C. § 524, federal law governs the rate of prejudgment interest. *See In re H.P. King Co., Inc.,* 64 B.R. 487 (Bankr.E.D.N.C.1986) and cases cited therein.

■ Generally, courts follow the federal common law rule regarding prejudgment interest. If the claim is liquidated, the party from whom money was withheld is entitled to prejudgment interest as a matter of right. *See Sun Shipbuilding & Dry Dock Co. v. United States Lines, Inc.,* 439 F.Supp. 671, 675 (E.D.Pa.1977). *But see Nedd v. United Mine Workers of America,* 488 F.Supp. 1208, 1216–1219 (M.D.Pa.1980) (existence of a federal common law rule questioned).

■ The Supreme Court in *Miller v. Robertson,* 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265 (1924) discussed the rationale of the federal common law rule and stated: "One who has had the use of money owing to another justly may be required to pay interest from the time the payment should have been made. Both in law and in equity, interest is allowed on money due." *Miller,* 266 U.S. at 257–258, 45 S.Ct. at 78–79, citing *Spalding v. Mason,* 161 U.S. 375,

396, 16 S.Ct. 592, 600, 40 L.Ed. 738 (1896). In this case the plaintiff was deprived of the use of $7,227.15 by the defendants' violation of the discharge injunction. Thus, prejudgment interest is necessary to fully compensate the plaintiff for the loss of such use. Since the amount was liquidated at all times, interest will be awarded retroactive to the date of payment on January 14, 1986.

No express statutory provision exists for determining the prejudgment interest rate on a recovery of monies paid on a discharged debt. The determination of the prejudgment interest rate is generally left in the discretion of the trial court. *United States v. Dollar Rent A Car Systems, Inc.,* 712 F.2d 938, 940 (4th Cir.1983). Most federal courts which have addressed the issue of the applicable prejudgment interest rate in a case involving a federal question have used the applicable federal postjudgment interest rate pursuant to 28 U.S.C. § 1961. *See In re Home Co.,* 108 B.R. 357, 360–361 (Bankr.N.D.Ga.1989) and cases cited therein. Specifically, the federal postjudgment interest rate determined pursuant to 28 U.S.C. § 1961 has been utilized as the appropriate prejudgment interest rate in this court on recoveries under the Bankruptcy Code. *In re Express Liquors, Inc.,* 65 B.R. 952, 962 (Bankr.D.Md. 1986) (recovery of avoided preferential transfers).

■ Section 1961 provides that postjudgment interest is to be granted "at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury Bills settled immediately prior to the date of judgment." 28 U.S.C. § 1961. In determining the appropriate prejudgment interest rates, the rate in effect on the date prejudgment interest is awarded should be used. *See In re H.P. King, supra,* 64 B.R. at 492; *In re Home Co., supra,* 108 B.R. at 361; *In re Express Liquors, Inc., supra,* 65 B.R. at 962. Therefore, prejudgment interest will be set at 7.57%, the rate in effect on January 14,

1986 computed daily and compounded annually in accordance with 28 U.S.C. § 1961.

 Debtor has requested punitive damages. However, debtor failed to convince the court that either defendant Harvey Weeks or defendant Sharon Weeks had actual knowledge of debtor's bankruptcy case prior to shortly before the 1986 house settlement. Further, Mrs. Sharon Weeks was not personally involved in collecting the note in 1986. Therefore, there is no basis for a claim of punitive damages against defendant Mrs. Sharon Weeks, regardless of the Court's rulings on other issues. *Cf. In re Wagner*, 74 B.R. 898, 903–905, (Bankr.E.D.Pa.1987) (to recover punitive damages for violation of the automatic stay pursuant to § 362(h), movant must show creditor acted with actual knowledge of or with reckless disregard to the automatic stay). The request for punitive damages against defendant Harvey Weeks will also be denied because, while his actions were deliberate, no malevolent intent has been shown, and there was confusion over the status of the knowledge of the respective parties of the bankruptcy and of the confessed judgment action prior to the January, 1986 settlement. While Mr. Weeks was orally advised by debtor of her bankruptcy discharge, he was not provided with a copy of the actual discharge injunction and appears not to have appreciated its impact on the recorded judgment and unavoided lien.

Debtor has also requested reasonable attorneys fees as an element of her damages. Generally, the American rule governs the awarding of attorneys fees in federal courts. *F.D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 126, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703 (1974). The American rule provides that each party should bear the costs of his own legal fees. *Id.*, 417 U.S. at 129, 94 S.Ct. at 2165. Attorneys' fees may also be awarded incident to a statute or contract which provides for such fees. There are three judicially created exceptions to the American rule based on the inherent equitable powers of a court: (1) when the litigant preserves or recovers a fund for the benefit of others; (2) when a

losing party acts in bad faith, vexatiously, wantonly, or for oppressive reasons; or (3) when a defendant wilfully disobeys a court order. *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

 There is no express statutory authority for attorneys fees applicable to this case; Section 524 of the Bankruptcy Code does not provide for attorneys fees as a sanction for violating the discharge injunction, as does Section 362(h) for violating the automatic stay. Further, it does not appear that an exception to the American rule for attorneys fees applies. The Debtor did not recover a fund for the benefit of others. No bad faith, vexatious or wanton actions, or oppressive motivations have been shown to this court to justify an award of attorneys' fees. What has been shown is that the defendants acted to collect on a judgment to which they believed they were entitled. Defendant Harvey Weeks may have acted deliberately to collect the debt; but it has not been shown he acted with actual knowledge of the wording of the discharge order, that he acted deliberately to violate the court's order, or that his conduct rises to the level of bad faith, or wanton or oppressive action.

As for the third exception to the American rule, attorneys fees have been awarded in contempt actions brought for violations of the permanent injunction of discharge. *Matter of Miller*, 81 B.R. 669 (Bankr.M.D. Fla.1988) and *In re Miller*, 89 B.R. 942 (Bankr.M.D.Fla.1988); *Behrens v. Woodhaven Ass'n.*, 87 B.R. 971 (Bankr.N.D.Ill. 1988); *In re Roush*, 88 B.R. 163 (Bankr.S. D.Ohio 1988); *In re Barbour*, 77 B.R. 530 (Bankr.E.D.N.C.1987). The authority for such an exercise of contempt power by the bankruptcy courts has been variously found: (1) in the inherent power of all courts, including bankruptcy courts, to exercise civil contempt power to enforce compliance with their lawfully issued orders; (2) in the statutory authority granted implicitly by 11 U.S.C. §§ 105(a) and (c), particularly with respect to core proceedings under 28 U.S.C. § 157(b); and (3) in Bank-

**450**

ruptcy Rule 9020, its historical derivation and its predecessor rules. *Matter of Miller, supra, Behrens v. Woodhaven Ass'n, supra; In re Barbour, supra; In re Roush, supra.*

Debtor did not bring this complaint as an action for contempt, and it was not presented to this court as a contempt proceeding. Bankruptcy Rule 9020 requires notice and a hearing as a predicate to finding contempt which was committed outside the presence of the bankruptcy judge. The technical notice and hearing requirements of Bankruptcy Rule 9020 have not been met, since the debtor did not move this court to find either defendant in contempt. Therefore, an award of attorneys fees based on a finding of contempt is not appropriate here, and attorneys fees will not be awarded.

A separate order has been entered incorporating this decision.

### ORDER GRANTING JUDGMENT IN FAVOR OF DEBTOR

Upon the complaint of debtor, Dorothy M. Brantley, seeking damages for violation of discharge, after an evidentiary hearing, and for the reasons set forth in the Memorandum Decision filed contemporaneously herewith, it is, this 16th day of April, 1990, by the United States Bankruptcy Court for the District of Maryland,

ORDERED That judgment is hereby entered in favor of the debtor, Dorothy M. Brantley, and against the defendants, Sharon A. Weeks and Harvey B. Weeks, jointly and severally, in the amount of $7,227.15, with prejudgment interest at the rate of 7.57% computed daily and compounded annually from January 14, 1986 to the date this order is entered, plus costs. Postjudgment interest shall be computed at the rate 8.32% from the date this order is entered.